Hiteshkumar "Henry" BHAKTA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–97–00339–CR.

Court of Appeals of Texas, San Antonio.

July 15, 1998.

Jack B. Zimmermann, Terri R. Jacobs, Zimmermann & Lavine, P.C., Houston, for Appellant.

Lynn Ellison, District Attorney, Carrie Moy Majors, Assistant District Attorney, Jourdanton, for Appellee.

Before STONE, GREEN and PRESTON H. DIAL, Jr.,[1] JJ.

---

1. Assigned to this case by the Chief Justice of the Texas Supreme Court.

## OPINION

PRESTON H. DIAL, Jr., Justice.

Appellant, Hiteshkumar "Henry" Bhakta ("Bhakta"), appeals his murder conviction, contending the trial court committed reversible error by overruling his objections to the prosecutor's comments on his post-arrest silence. We reverse the trial court's judgment and remand the cause to the trial court for a new trial.

## BACKGROUND

Bhakta was indicted for the murder of Chris Padron ("Padron"). At a jury trial, Bhakta testified that he shot Padron in self-defense. During closing arguments, the prosecutor made the following comments, to which Bhakta's trial counsel objected:

PROSECUTOR: Once you decide that you believe that Mr. Bhakta committed the killing, committed the murder, then you decide whether or not he's justified in doing so. He's claiming self-defense. You heard evidence all week long from, I believe it was, ten eyewitnesses. You didn't hear from any of them, with the exception of the defendant, that self-defense was ever involved in this case.

The only person that told you anything was the defendant and he sure didn't tell the cops that at the time. He told you in court. That's it. That's the first you heard it. That's the first anybody heard of it.

DEFENSE COUNSEL: I'm going to object, if it please the court. That's the first anybody heard about it? I heard about it right away. I object.

THE COURT: Well, that's outside the evidence. I'll overrule.

\* \* \* \* \* \* \* \* \* \* \*

PROSECUTOR: Let's look at what Bhakta did tell you on the stand. We have already gone over what he didn't say in his statement, and coincidentally, that he didn't say at the scene, and he didn't tell any officer—

DEFENSE COUNSEL: Now, Judge, I'd object to that comment. May we approach the bench?

THE COURT: You may.

(The following objection was made outside the hearing of the jury.)

DEFENSE COUNSEL: I object to the comments of post-arrest silence. Mr. Bhakta was under arrest by Officer McCarley. He was in custody. He was given his Miranda warnings and elected not to make a statement. Counsel has told this jury that he should have given them that statement at the scene. He was in custody. And that is a comment on his invocation of the Fifth Amendment and it's a violation of the Fifth Amendment and the Texas constitution.

(Bench conference concluded.)

THE COURT: I overrule the objection and I will advise the ladies and gentlemen of the jury that a defendant who is under arrest has no obligation of any kind to make a statement of any kind. You recall that, and in particular, there is no duty to make a statement to an officer at the scene of his arrest. And you will recall what the evidence reflects as to whether a statement was or was not given. You may proceed.

DEFENSE COUNSEL: In light of that instruction I'll have to move for a mistrial, Your Honor.

THE COURT: It's overruled.

## ANALYSIS

Bhakta contends that the prosecutor's comments violated both his federal and state constitutional rights to remain silent and to due process of law. Bhakta asserts that the comments were directly linked to the only crucial issue in the case, that of self-defense, and the comments also attacked his credibility. The State counters that the comments were not comments on Bhakta's post-arrest silence, but were reasonable, permissible inferences from the evidence and responsive to arguments by opposing counsel.

 The State may not use a defendant's post-arrest silence to impeach or discredit a defendant's exculpatory theory, in-

cluding a self-defense claim elicited for the first time at trial. *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex.Crim.App.), *cert. denied*, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995); *Sanchez v. State*, 707 S.W.2d 575, 582 (Tex.Crim.App.1986); *Miller v. State*, 939 S.W.2d 681, 687 (Tex.App.—El Paso 1996, no pet.). Such impeachment violates the defendant's right against self-incrimination. *Dinkins v. State*, 894 S.W.2d at 356; *Sanchez v. State*, 707 S.W.2d at 582. Nevertheless, a defendant must object in order to preserve a complaint regarding the improper use of his post-arrest silence. *Miller v. State*, 939 S.W.2d at 687–88; TEX. R.APP. P. 33.1.

The State initially contends that Bhakta failed to preserve error as to the first comment and that the prosecutor's comments were not comments on the defendant's post-arrest silence. The State asserts that the first comment was directed at the time of the interview and that the second comment was cut short before the prosecutor could clarify its meaning.[2]

■ With regard to the first comment, we agree that Bhakta failed to preserve error. In order to preserve error, an objection to the trial court must not only identify what is objected to but must set forth grounds for the objection with sufficient specificity to make the trial court aware of the complaint. *Cisneros v. State*, 692 S.W.2d 78, 83 (Tex. Crim.App.1985); TEX.R.APP. P. 33.1. As we view the record, the "objection" to the first comment was merely a statement that defense counsel had heard about the self-defense theory prior to trial in response to the prosecutor's comment that no one had heard the theory prior to trial. This view of the record is supported by the trial court's remark that the timing when defense counsel first heard of the theory was outside the record. We hold that Bhakta failed to preserve error with regard to the prosecutor's first comment.

■ With regard to the second comment, we disagree with the State that the comment was not a comment on post-arrest silence. The prosecutor expressly alluded to what Bhakta did not say at the scene of the alleged crime, and Bhakta was clearly under arrest at the scene. While the prosecutor may, in hindsight, wish to have the comment read in a more favorable light, we must interpret the comment in the text of the actual language used at trial. Therefore, the trial court erred in overruling Bhakta's objection to the comment. Having determined that the trial court erred in overruling the objection, we must determine whether the error resulted in harm.

■ Since the error resulted in a violation of Bhakta's constitutional right against self-incrimination, we are required to reverse the conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX.R.APP. P. 44.2(a); *see also Dinkins*, 894 S.W.2d at 356. In determining our approach to this harm analysis, we first consider whether the trial court's comment after overruling the objection constituted an instruction to disregard. Although the trial court informed the jury that Bhakta was not required to make any statement to an officer at the scene, the trial court did not instruct the jury to disregard the prosecutor's comment. By overruling the objection, the prosecutor's comment left the jury with the impression that if Bhakta shot Padron out of fear for his life, Bhakta would have said something at the scene regardless of the absence of any duty to make such a statement. The trial court's comment did not equate to an instruction that the jury was prohibited from drawing an inference of guilt from Bhakta's silence, which was the inference the prosecutor was suggesting. *See Dinkins*, 894 S.W.2d at 356 (inference of guilt prohibited). Therefore, we apply the following factors in reviewing the record for harm: (1) the source and nature of the error; (2) the extent to which it was emphasized by the State; (3) the weight

---

**2.** The State asserts the comment meant: "We have already gone over what he [Appellant] didn't say in his statement [to Sgt. Robert Ebrom], and coincidentally, that he didn't say at the scene [to any of the numerous witnesses there, including Chris Serenil and Paul Gonzales], and he didn't tell any officer—[including Chief Nolan Jonas, who the defense was so insistent the State should have asked a particular question to] ..."

a juror would probably place upon the error; and (4) whether finding the error harmless would encourage the State to repeat it with impunity. *Dinkins,* 894 S.W.2d at 356.

The State contends the comment was harmless because there was ample evidence that Bhakta had not acted in self-defense. However, our review of the record reveals numerous inconsistencies between the testimony of the various eyewitnesses. Conflicts existed between where the various eyewitnesses were located throughout the sequence of events preceding the shooting, and even the actions taken by certain witnesses during the shooting.[3] The defense introduced various reasons the eyewitnesses might be biased to testify in a certain manner.[4] One eyewitness admitted that he was not clear regarding all of the details of his testimony because he was tired and had been consuming large quantities of alcohol. Furthermore, the witnesses' testimony conflicted as to Bhakta's appearance following the shooting.[5]

█ It was undisputed that Padron came back to the scene of the shooting and was approaching Bhakta. Which witnesses the jury believed regarding Padron's actions while approaching Bhakta depended upon the jury's resolution of the credibility of the various witnesses given the conflicts in their testimony. With credibility being such a critical issue, the prosecutor's comment seeking to impeach Bhakta's credibility, and the suggested inference of guilt from his silence, could have been given decisive weight by the jury. Although the State seeks to rely on subsequent letters from jurors to explain the reason for their verdict, the State has given us no authority that would allow us to consider the letters in our analysis, and we are unable to find any.

Given the importance of credibility in the jury's deliberations, we cannot conclude beyond a reasonable doubt that the prosecutor's comment did not contribute to the conviction. Therefore, we find the trial court's failure to sustain the objection to the comment harmful, and we reverse the trial court's judgment. The cause is remanded to the trial court for a new trial.

---

3. Various accounts were given as to when Andrea Yeater, Samir Patel, Melissa Aguero, Chris Serenil and Bhakta were inside and outside the living quarters behind the office of the motel. The eyewitness testimony was inconsistent as to which individuals were outside at the time of the shooting and which individuals were yelling insults. Two eyewitnesses testified that Yeater was outside struggling to prevent Bhakta from shooting, which is inconsistent with Yeater's testimony.

4. Defense counsel questioned Andrea Yeater regarding the blame placed on her for Padron's death, and her desire to improve her reputation in the community.

5. Chris Serenil testified that Bhakta admitted to the shooting and laughed. This testimony was contradicted by an officer's testimony that Bhakta appeared dazed and confused when he responded to Serenil's question with respect to whether Bhakta shot Padron.