In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00057-CV


______________________________






IN THE MATTER OF THE


MARRIAGE OF


MARC MATHISON AND ALICE MATHISON






 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 02-0079




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Marc Mathison, appellant, has filed a motion seeking to dismiss his appeal because
the protective order from which he was appealing has been withdrawn by the trial court. 
His motion is granted.

 The appeal is dismissed.


 Donald R. Ross

 Justice


Date Submitted: May 7, 2002

Date Decided: May 7, 2002


Do Not Publish



PAN STYLE="font-family: Times New Roman">
Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 A jury convicted Michael Charles Fuller of one count of sexual assault of a child and two
counts of indecency with a child, namely, J.W., his girlfriend Connie Moore's then-fifteen-year-old
daughter. The jury assessed punishment at eight years', five years', and five years' confinement,
respectively, and the trial court sentenced Fuller to those terms, to run concurrently. Fuller raises
nine issues on appeal. 

I. Speedy Trial

 In issues eight and nine, Fuller asserts speedy trial violations. Over four years elapsed
between the filing of the indictment and Fuller's trial. 

 Extended governmental delay in prosecuting entitles a defendant to relief based on the right
to a speedy trial. See Doggett v. United States, 505 U.S. 647, 652 (1992). If a violation of the
speedy trial right is established, the only possible remedy is dismissal of the prosecution. Strunk v.
United States, 412 U.S. 434, 440 (1973). In determining whether an accused has been denied his
or her right to a speedy trial, a court must use a balancing test "in which the conduct of both the
prosecution and the defendant are weighed." Barker v. Wingo, 407 U.S. 514, 530 (1972). 

 The factors to be weighed in the balance include, but are not necessarily limited to, (1) the
length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his or her speedy trial
right, and (4) the prejudice to the defendant resulting from the delay. See id. No single factor is
necessary or sufficient to establish a violation of the right to a speedy trial. Id. at 533; Dragoo v.
State, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). However, if the defendant fails entirely to raise
the speedy trial issue "at or prior to trial" and only raises the issue on appeal, the defendant does not
preserve the error for review. Wade v. State, 83 S.W.3d 835, 838 (Tex. App.--Texarkana 2002, no
pet.). 

 Fuller never raised the speedy trial issue--by requesting a trial date or by seeking dismissal
of the case--until after the trial was concluded. (1) Fuller waived any speedy trial violation by not
objecting at or prior to trial, and we may not consider the issue for the first time on appeal. 
Accordingly, these points of error are overruled.

II. Legal Sufficiency

 In issue five, Fuller asserts that the evidence was legally insufficient to support the sexual
assault conviction. As indicted and charged in count three, the State had to prove that Fuller
intentionally or knowingly caused J.W.'s sexual organ to contact Fuller's mouth. See Tex. Penal
Code Ann. § 22.011(a)(2)(C) (Vernon Supp. 2006). (2)

 A. Standard of Review

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). In our review, we must evaluate all of the evidence in the record, both direct and
circumstantial, whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740 (Tex.
Crim. App. 1999). We are required to "defer to the jury's credibility and weight determinations" in
our legal sufficiency review. Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

 B. Discussion

 J.W. testified that, when she was about fifteen years old, she and Fuller, who was dating
J.W.'s mother and living with the family, "were watching TV as usual, and he just started the oral
sex." On another occasion in her testimony, J.W. stated that "[t]he oral sex happened." When the
State asked J.W. to specify the acts involved, J.W. testified, "He got on top of me and he was pulling
my shorts down, and I'm trying to get him off of me, but he wouldn't move. I couldn't move him. 
And he started the oral sex." As further evidence, the State introduced, over defense objection, a
letter in which J.W. wrote that Fuller pulled her panties down and "began licking rough." 

 Fuller testified in his defense and denied having oral sex with J.W. Fuller also produced two
witnesses who testified that J.W. had "said nothing happened" and had "said that she would do
whatever she could to get [Fuller] away from her mother." We defer to the jury's credibility and
weight determinations, implicit in the verdict, that J.W.'s story was credible despite the testimony
of Fuller and other defense witnesses. See id.

 Still, Fuller asserts that J.W.'s testimony is too vague to constitute legally sufficient evidence
because the term "oral sex" could just as easily reference contact between J.W.'s mouth and Fuller's
genitals, which would be contact not charged. However, the jury was entitled to make reasonable
inferences from the evidence. See Hooper v. State, 214 S.W.3d 9 (Tex. Crim. App. 2007). The
inference that Fuller's was the active mouth rises from combining J.W.'s testimony about oral sex
with the letter referencing Fuller's "rough licking" and is more than reasonable. 

 Additionally, Fuller contends that, even if the inference is made that it was his mouth to her
body, the State never defined what J.W. meant by "oral sex" so as to include the required element
of contact to her sexual organ. In other words, J.W. could understand that "oral sex" means "kissing"
or that Fuller's mouth touched J.W.'s anus, thigh, or some other nonsexual organ part. We find that
the jury could reasonably infer that J.W.'s use of the term "oral sex" was consistent with its common
and plain meaning. "Oral sex" is "oral stimulation of the genitals." Merriam-Webster's
Collegiate Dictionary 872 (11th ed. 2006) (referring also to two synonymous entries: 
"cunnilingus" and "fellatio"); see also Donoho v. State, 643 S.W.2d 698, 700 (Tex. Crim. App. 1982)
(oral sex denotes contact between mouth and naked genitals); Gagliardo v. State, 78 S.W.3d 469,
475 (Tex. App.--Tyler 2001, pet. ref'd) ("reciprocal oral sex" legally sufficient). J.W.'s testimony
serves as sufficient evidence of contact between mouth and genitals. 

 We find, on a review of the full record, and viewing all of the evidence in the light most
favorable to the verdict, that a rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. The evidence is legally sufficient; the point of error is overruled.

III. Ineffective Assistance of Counsel

 In issues one and two, Fuller claims ineffective assistance of counsel pervaded the entire
defense, discussing numerous discrete examples, and urges that we reverse and remand for a new
trial.

 A. Standard of Review

 The standard of testing claims of ineffective assistance of counsel is set out in Strickland v.
Washington, 466 U.S. 668 (1984), and adopted for Texas constitutional claims in Hernandez v. State,
726 S.W.2d 53, 57 (Tex. Crim. App. 1986). To prevail on this claim, an appellant must show that
(1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient
performance prejudiced the defense. Strickland, 466 U.S. at 689; Rosales v. State, 4 S.W.3d 228,
231 (Tex. Crim. App. 1999). To meet the burden on the first prong, the appellant must prove by a
preponderance of the evidence that the attorney's representation objectively fell below the standard
of prevailing professional norms; to meet the burden on the second prong, the appellant must show
a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
would have been different. A reasonable probability is a probability sufficient to undermine
confidence in the outcome. Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). 

 In determining if counsel's performance was deficient, our review of counsel's representation
is highly deferential, and we indulge a strong presumption that counsel's conduct falls within a wide
range of reasonable representation. Strickland, 466 U.S. at 689; Tong v. State, 25 S.W.3d 707, 712
(Tex. Crim. App. 2000). Any allegation of ineffectiveness must be firmly founded in the record, and
the record must affirmatively demonstrate the alleged ineffectiveness. Thompson v. State, 9 S.W.3d
808, 813 (Tex. Crim. App. 1999). In the absence of direct evidence of counsel's reasons for the
challenged conduct, we will assume a strategic motivation if any can be imagined. Garcia v. State,
57 S.W.3d 436, 440 (Tex. Crim. App. 2001). A full inquiry into the strategy or tactics of counsel
should be made only if, from all appearances after trial, there is no plausible basis in strategy or
tactics for counsel's actions. See Johnson v. State, 614 S.W.2d 148, 152 (Tex. Crim. App. [Panel
Op.] 1981); Ex parte Burns, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980); Stenson v. State, 695
S.W.2d 569, 571 (Tex. App.--Dallas 1984, no pet.). 

 When, as here, ineffective assistance is raised on direct appeal, appellate counsel and the
court must proceed on a trial record not developed for the object of litigating or preserving the claim
and thus often incomplete or inadequate for this purpose. (3) Freeman v. State, 125 S.W.3d 505, 506
(Tex. Crim. App. 2003); cf. Massaro v. United States, 538 U.S. 500, 504-05 (2003). Nonetheless,
some claims may be disposed of on direct appeal where "trial counsel's ineffectiveness is so apparent
from the record." Massaro, 538 U.S. at 508; Freeman, 125 S.W.3d at 506; see also Andrews v.
State, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005); Thompson, 9 S.W.3d at 814 n.6. "[W]hen no
reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below
an objective standard of reasonableness as a matter of law, regardless of whether the record
adequately reflects the trial counsel's subjective reasons for acting as she did." Andrews, 159 S.W.3d
at 102. A claim of ineffective assistance of counsel, on an undeveloped record on direct appeal,
should, nonetheless, "be entertained and upheld if supported by the record." Oldham v. State, 977
S.W.2d 354, 360 (Tex. Crim. App. 1998).

 B. Discussion

 1. General Evidentiary Matters (Hearsay, Leading, Relevancy, Sidebar
Comments, Badgering)


 Fuller complains his counsel was ineffective in not objecting to the State's repeated badgering
of and sidebar comments about Fuller. Fuller testified in his defense at both the guilt/innocence and
punishment phases of the trial. Fuller's counsel made no objections in this lengthy exchange during
the State's cross-examination of Fuller:

 Q. [by the State] You take [J.W.] other places by herself?


 A. [by Fuller] Yes.


 Q. Like where?


 A. To her boyfriends.


 Q. You did that without her mom. You've been dying to say this, by the
way. You've been trying to say that since you hit the witness stand. All right. So you
took - - let's go - - let's get it out in the air. Connie did not like [J.W.]'s boyfriend?


 A. No.


 Q. She didn't want her to see him?


 A. No.


 Q. You would help [J.W.] get out of the house and go see the boyfriend. 
Is that right?


 A. That's right.


 Q. You allowed her to go do something her mom would not approve of;
is that right?


 A. Her mom - - her mom - - 


 Q. Yes or no. Mr. Fuller, you've been dying to trash [J.W.] since you
walked in this courtroom. I gave you your chance. You said it. Now, let's talk about
the truth. All right. You allowed [J.W.] to do stuff her mother would not approve
of. Yes or no?


 A. No.


 Q. You didn't take her to see her boyfriend - - 


 A. I took her to see her boyfriend.

 Q. - - when Connie would not approve it? Did you tell Connie?


 A. Connie said she didn't care.


 Q. Oh, she didn't care. So why was it such a big deal for you to tell this
jury all day? You've been dying since 1:30 to tell this jury that you snuck her out of
the house to see her boyfriend. If it wasn't such a big deal, why have you been dying
to say it?


 A. To tell the truth.


 Q. Which you have never done a day in your life?


(Emphasis added.) Fuller asserts that not only was an objection required here, but that this
questioning was so calculated to inflame the jury that a mistrial was in order. While the State's
conduct here is objectionable, on the record on direct appeal it is difficult to find that Fuller has met
his burden. Although counsel's reasons for not objecting do not appear in the record on direct
appeal, his conduct could have been part of a plausible trial strategy to avoid emphasizing the matter
to the jury or avoid having the jurors believe that Fuller was hiding something from them. 

 Fuller also asserts that counsel was ineffective by failing to object to the State's "badgering"
of Fuller for his alleged failure to advise the State of exculpatory evidence. The prosecutor noted
that "[i]t's only on the day of trial that these people [defense witnesses] show up" and that none of
the defense witnesses had talked to the State in the past four years, and asked Fuller: "don't you
think it would be important to turn it [his defense theory] over to the state?" Fuller frames the issue
as the State's comments on Fuller's post-arrest silence, citing Bhakta v. State, 981 S.W.2d 293 (Tex.
App.--San Antonio 1998, pet. ref'd), and Nixon v. State, 940 S.W.2d 687 (Tex. App.--El Paso 1996,
pet. ref'd). These cases are distinguishable from Fuller's cited authority. Bhakta reversed a judgment
in which the prosecutor attempted to impeach the defendant's trial testimony by asserting, during
closing arguments, that the defendant should have given a statement in his defense to the officers on
the scene at his arrest. Bhakta, 981 S.W.2d at 295. The Nixon case also involved the State's attempt
to impeach the defendant's credibility by noting the defendant had failed to give a written custodial
statement. Nixon, 940 S.W.2d at 692. The prosecutor here did not exclusively reference custodial
situations, but referenced the entire four-year period between Fuller's arrest and trial. Moreover, the
State questioned not Fuller's own silence, but Fuller's defense witnesses' silence during that period. 
Thus, although the State's questioning may be objectionable, it may be objectionable by implying
defense misconduct (i.e., implying Fuller did not comply with some duty to disclose evidence) rather
than by implicating Fuller's own post-arrest silence. Since the State did not comment on Fuller's own
post-arrest silence, Fuller's counsel had no reason to object on that basis, and Fuller has failed to
meet his burden under the first prong.

 Fuller further asserts that counsel was ineffective by (1) not objecting to J.W.'s hearsay
testimony that she had "heard about [Fuller] through friends, and it just wasn't a good reputation that
he had through the public" and that she "heard" from a friend at school that Fuller was cheating on
her mother; (2) not objecting to the State's use of leading questions in the direct examination of
several of the State's witnesses; and (3) not objecting to the State's improper impeachment of defense
witness Wallace through an "onslaught of attack," which included hostile and rude questions
regarding Wallace's child visitation and support payment history (both good), and misdemeanor
convictions for marihuana possession, criminal mischief, and assault. Counsel's reasons for not
objecting do not appear in the record on direct appeal, and his conduct could have been part of a
plausible trial strategy--e.g., to not draw the jury's attention to the matters, to not give the jury the
impression that witnesses had something to hide, or to not appear to the jury to be trying the case on
technicalities. Because we can imagine plausible trial strategies for counsel's choices, Fuller has
failed to rebut the presumption of competence on this complaint as presented on direct appeal. 

 Additionally, Fuller complains his counsel failed to object to hearsay testimony from police
officer Lee Foreman regarding Fuller's alleged commission of an extraneous offense. Foreman
testified that, in connection with the earlier offense, he had arrested Fuller pursuant to a warrant and
participated in the investigation by recovering a shell casing. We disagree that the complained-of
testimony was clearly hearsay and, thus, Fuller's counsel did not fall below an objective standard of
reasonableness for not objecting. 

 2. Failure to Object to Jury Acquittal as "Extraneous Offense" or "Bad
Act"


 Fuller complains of a more glaring deficiency at the punishment phase of the trial. Fuller's
counsel failed to object to the introduction, through several witnesses, of evidence that Fuller was
actually guilty of possessing drugs in 1992, even though Fuller had been acquitted of that charge by
a jury. In fact, much of the punishment phase of Fuller's trial was focused on relitigating this earlier
offense.

 The Fifth Amendment guarantee against double jeopardy contains a collateral estoppel rule
which provides that, "when an issue of ultimate fact has once been determined by a valid and final
judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe
v. Swenson, 397 U.S. 436, 443 (1970); see also U.S. Const. amend. V. The precluded issue must
be the same as that determined in the prior proceeding. See Ex parte Taylor, 101 S.W.3d 434,
441-42 (Tex. Crim. App. 2002). There are "no hard and fast rules concerning which factual issues
are legally identical and thus barred from relitigation in a second criminal proceeding. As Professor
Wright concludes: 'If an ordinary person would expostulate, 'But that's a different issue,' probably
it is.'" Id. at 442 (citing 18 Charles Alan Wright, et al., Federal Practice and Procedure
§ 4417 (2d ed. 2000)).

 The State elicited testimony regarding Fuller's actual possession of the drugs--with no
objections from Fuller's counsel--from Connie (who testified that Fuller had boasted he "got off"
or had beaten the rap by flushing the drugs down a toilet); from arresting officer Shane Boatwright
(who testified to hearsay from another officer and Connie that Fuller had drugs on him that night in
1992); from investigating officer Tim Moree (who testified to the large amount of drugs found at the
time of Fuller's 1992 arrest); and from officer Lee Foreman (who identified substances in
photographs from the 1992 offense as crack cocaine and testified to the street value of Fuller's
alleged drugs, although he was not an officer in 1992 and did not become a narcotics officer until
2000). Additionally, Fuller's counsel did not object to the State's cross-examination of Fuller, during
the punishment phase, about the 1992 drug arrest of which he was acquitted. The State urged the
jury to reject community supervision now because Fuller had already "skated by off that drug case
. . . he got by with it." The jury was given the instruction that it may only consider extraneous
offense evidence if it believed beyond a reasonable doubt that Fuller committed the offense or bad
act. 

 While the State's actions suggest a double jeopardy collateral estoppel rule violation, the
record presented on direct appeal does not contain the record of the prior proceeding. In order to
apply the collateral estoppel rule to preclude relitigation of the same issue, appellate courts "must
examine the record of the prior proceeding, taking into account the pleadings, evidence, charge, and
other relevant matters to determine whether a rational fact finder could have grounded its decision
on" a different fact. Doty v. State, No. 03-03-00668-CR, 2005 WL 1240697, at *4 (Tex.
App.--Austin May 26, 2005) (mem. op., not designated for publication), pet. dism'd, improvidently
granted, No. PD-1159-05 (Tex. Crim. App. March 21, 2007), available at
http://www.cca.courts.state.tx.us/opinions/HTMLOpinionInfo.asp?OpinionID=15160. Because we
have no record of the earlier proceeding, the record as presented on this direct appeal does not allow
a finding that the admission of this evidence was objectionable. Accordingly, Fuller has not met his
burden that counsel had no plausible strategy in not objecting.

 3. Testimony of Complainant's Truthfulness 

 Fuller asserts counsel was ineffective by not objecting to the State's "bolstering" of J.W.'s
truthfulness and credibility through both experts and lay witnesses. Indeed, the State called, in
addition to J.W., only four witnesses, each of whom testified, in some manner, that J.W. was telling
the truth. Three of these witnesses testified to the specific truthfulness and credibility of J.W.'s
allegations. On a review of the applicable authority, and the details of the testimony to which
Fuller's counsel failed to object, we find that this is one of those rare cases in which the record on
direct appeal is sufficient to decide counsel had no plausible trial strategy for not objecting to the
inadmissible testimony and that his conduct was deficient. See Andrews, 159 S.W.3d at 103. 

 a. Applicable Law

 "[E]xpert testimony that a particular witness is truthful is inadmissible under Rule 702." 
Yount v. State, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993). An expert may not offer a direct
opinion on the truthfulness of a child complainant's allegations. Schutz v. State, 957 S.W.2d 52, 59
(Tex. Crim. App. 1997). Moreover, an expert is not permitted to give an opinion that the
complainant or class of persons to which the complainant belongs (such as child sexual assault
victims) is truthful. Yount, 872 S.W.2d at 712; cf. Schutz, 957 S.W.2d at 70 (testimony about
children's ability to accurately perceive or remember is allowable, but not a particular child's
tendency to do these things). This is because experts on child sexual abuse "are not human lie
detectors. Nor are they clairvoyant." Yount, 872 S.W.2d at 710 (quoting John E.B. Meyers et al.,
Expert Testimony in Child Sexual Abuse Litigation, 68 Neb. L. Rev. 1, 121 (1989)). Instead of
experts, it is jurors who must draw "conclusions concerning the credibility of the parties in issue." 
Yount, 872 S.W.2d at 710. The Texas Court of Criminal Appeals found that "[v]irtually every
jurisdiction which has addressed, in the context of a child sexual assault case, the admissibility of
direct testimony as to the truthfulness of the child complainant, has held that such direct testimony
is inadmissible." Id. at 711 n.8 (citations omitted). 

 Moreover, the defense does not "open the door" to otherwise inadmissible expert opinion
testimony on the truthfulness of a complainant's allegations by cross-examining the complainant
herself or the complainant's mother. See Schutz, 957 S.W.2d at 72.

 Nonexpert testimony may be offered to support the credibility of a witness in the form of
opinion or reputation, but "the evidence may refer only to character for truthfulness or
untruthfulness." Tex. R. Evid. 608(a)(1). A lay witness may not, under Rule 608, testify to the
complainant's truthfulness in the particular allegations. See Schutz, 957 S.W.2d at 72. Further,
evidence of truthful character may only be offered "after the character of the witness for truthfulness
has been attacked by opinion or reputation evidence or otherwise." Tex. R. Evid. 608(a)(2).

 b. The Teacher's Testimony

 The State, in its case-in-chief, introduced lay opinion testimony from J.W.'s eighth-grade
science teacher (now the high school principal) that, generally, J.W. is a credible and truthful person. 
The teacher also, however, testified that he has "a feel" for the students, that he is usually right in his
feelings and impressions, that he knows who is credible and who is not, and that J.W. is credible. 

 Assuming, without deciding, that this testimony did not exceed the bounds of acceptable
evidence of truthful character under Rule 608, the testimony would have been admissible only after
J.W.'s character for truthfulness had been attacked. See Tex. R. Evid. 608(a); see also Schutz, 957
S.W.2d at 76. The State, however, introduced this testimony not in rebuttal, but in its case-in-chief. 
The State asserts that Fuller "attempted" to impeach J.W. while cross-examining her. The State does
not assert that this "attempt" was successful; indeed, the record indicates that, on being asked if she
had given a different account of her allegations to others, J.W. denied ever giving an earlier
inconsistent account. Allowing the State to pre-emptively "rebut," through lay opinion testimony,
attacks on its complaining witnesses solely on the basis of the cross-examination of that witness is
inconsistent with the Schutz finding that the defense does not "open the door" for the same testimony
by an expert by cross-examining the complainant herself. See Schutz, 957 S.W.2d at 72.

 The State further asserts that, since Fuller denied the accusations in voir dire and his opening
statement, J.W.'s credibility was attacked from the start so as to allow rebuttal evidence bolstering
J.W.'s credibility during the State's case-in-chief. However, a defensive theory of fabrication (as
opposed to recent fabrication) which generally denies the charges against a defendant is not the
equivalent of an attack on the victim's general character for truthfulness so as to warrant the
admission of character testimony. Cf. Stitt v. State, 102 S.W.3d 845, 848 (Tex. App.--Texarkana
2003, pet. ref'd). The State points us to no testimony indicating that, at the time of the teacher's
testimony, Fuller had impeached J.W. by any means. As such, the teacher's testimony did "bolster"
J.W., without objection from Fuller's counsel.

 c. Connie's Testimony

 Fuller claims counsel was ineffective for not objecting to the State's bolstering of J.W.'s
truthfulness and testimony through her mother, Connie. The State asked Connie several times if she
believed J.W.'s allegations to be true, and Connie testified that she believed J.W. and her allegations. 
During direct examination of Connie, the State's second witness (after J.W. herself), the State asked:

 Q. As you sit here now, do you believe your daughter?


 A. Yes, I do.


The State, on redirect, asked:

 Q. Having heard all the evidence, you know, heard what [J.W.] had to
say, what she told the police, having heard the defendant's excuses for his conduct,
do you believe it happened?


 A. Yes, I do.


This testimony, as sought by the State, goes to the truth of the specific allegations and is expressly
inadmissible. See Schutz, 957 S.W.2d at 76.

 d. Huff's Testimony 

 After presenting Lieutenant Danny Huff as an expert in child sexual assault investigations,
the State asked Huff:

 Q. [by the State] Do you issue arrest warrants when you don't believe
them to be true?


 A. [by Huff] No.


 Q. Because you have reasonable suspicion, is that all you had?


 A. I'm sorry?


 Q. Do you end your investigation at reasonable suspicion or do you have
a stronger belief?


 A. Yeah, we have a - - we have - - I'm not sure exactly the words you say,
but we're very comfortable with the evidence that we have, the information that we
have to proceed to an arrest.


 Q. Okay. The legal burden is reasonable suspicion?


 A. Right.


 Q. That doesn't mean that's all you have?


 A. No.


 Q. And in this case is that all you had was a reasonable suspicion?


 A. No, not really.


 Q. Did you have beyond a reasonable doubt?


 A. I felt we did. I felt that we did.


(Emphasis added.) The prosecutor later continued this line of questioning:

 Q. [by the State] Did you make a determination whether [J.W.] was
credible prior to filing the arrest warrant? 


 A. [by Huff] I did.


 Q. Did you find her credible?


 A. Yes, sir.


 Q. Would you have filed it if you did not find her to be credible?


 A. No, sir.

(Emphasis added.) In closing arguments, the prosecutor reminded the jury that Huff had found J.W.
credible and he "believed her beyond a reasonable doubt."

 The State asserts Huff's testimony was not objectionable since Huff only testified to the
"process of conducting an investigation" into J.W.'s allegations, not into the truth of J.W.'s
allegations. The State calls Huff's testimony regarding J.W.'s credibility "foundational and
procedural" in the explanation of describing the process of his investigation and determination of
reasonable suspicion against Fuller. In support, the State cites Martinez v. State, 186 S.W.3d 59, 66
(Tex. App.--Houston [1st Dist.] 2005, pet. ref'd), and Dinkins v. State, 894 S.W.2d 330, 347 (Tex.
Crim. App. 1995). These cases analyze police officers' testimony about how the officers came to
suspect the accused, not for the truth of the accusations against the accused. The situation here is
distinguishable. First, the identity of the alleged perpetrator was never in question. Second, while
Huff did testify to investigation procedure, the State also elicited from Huff testimony about the
truthfulness of J.W.'s allegations. This is inadmissible. See Schutz, 957 S.W.2d at 76.

 e. Hunt's Testimony

 Similarly, Fuller's counsel did not object to testimony by Stephanie Hunt, a Child Advocacy
Center forensic interviewer, that J.W. was truthful. Again, the State asserts that Hunt was only
articulating the methodology she used in assessing the case. Hunt testifed that J.W. told her what
happened regarding the sexual abuse. The State asked Hunt to explain her expertise in discerning
truthfulness, and to apply it to J.W.'s allegations:

 Q. [by the State] Your 250 interviews that you've done personally and
100 or more - - several hundreds or more that you've helped participate in, do you
kind of get a feel for when someone is being truthful with you?


 A. [by Hunt] We have some things we look for as far as how consistent
are the statements and the mannerisms of the child that we're speaking to. We have
some things like that, that I look for.


 . . . . 


 Q. Simply because a child comes forward and says I've been sexually
abused, does the Child Advocacy Center, and you in particular, automatically believe
that child contrary to anything else that is said or done? 


 A. No, we do not.


 . . . . 


 Q. And based on that interview [with J.W.] and conduct that you
witnessed and how she described what happened, did you form an opinion as to
whether she was being truthful with you?


 A. Yes, I did.


 Q. And what was that opinion?


 A. I saw nothing in her demeanor and nothing in the information that she
gave me that indicated that she was not being truthful with me.


(Emphasis added.) The State's elicitation of Hunt's testimony regarding her expertise in determining
truthfulness and credibility, and her particular determination of J.W.'s truthfulness, are express error
per Schutz, 957 S.W.2d at 69, and Yount, 872 S.W.2d at 710 (child sex investigators are not lie
detectors and are not to supplant the jury's role in judging witnesses' credibility). Further the State
argued to the jury that Hunt had found the complainant to be credible and truthful. 

 f. Discussion: Ineffective Assistance of Counsel

 With deference to counsel's performance, and in trying to imagine a strategic motivation for
his conduct, we note that, throughout the trial, defense counsel's tactic seems to have been to allow,
without objection, the State's witnesses to testify to the credibility and truthfulness of J.W.'s
allegations and then, on cross-examination, to explore the foundation for that witness' belief in the
credibility, believability, or truthfulness of J.W.'s allegations. But, lack of a proper foundation is not
the problem with the offensive testimony; it is inadmissible whether properly founded or not. Not
surprisingly, counsel's "tactic" resulted in only more bolstering. It was, in essence, no strategy. See
Vasquez v. State, 830 S.W.2d 948, 950 n.3 (Tex. Crim. App. 1992) (finding ineffective assistance
on direct appeal because counsel's failure to request instruction on the only defense raised by the
evidence "would not have been acceptable strategy"); cf. Robertson v. State, 187 S.W.3d 475, 484
(Tex. Crim. App. 2006) (on record developed for ineffective assistance claim, counsel's misguided
and legally misinformed strategy to introduce evidence of defendant's otherwise inadmissible prior
convictions, when only issue was defendant's credibility, constitutes deficient performance since
such evidence "could serve no strategic value").

 On similar facts, three courts--Texarkana, Dallas, and El Paso--have found failure to object
to the repeated elicitation and offer of this type of testimony to constitute ineffective assistance of
counsel when presented on direct review. See Sessums v. State, 129 S.W.3d 242 (Tex.
App.--Texarkana 2004, pet. ref'd) (aggravated sexual assault of a child); Miller v. State, 757 S.W.2d
880 (Tex. App.--Dallas 1988, pet. ref'd) (aggravated sexual assault of a child); Garcia v. State, 712
S.W.2d 249 (Tex. App.--El Paso 1986, pet. ref'd) (burglary with attempt to commit indecency with
a child). In all three of those cases, as in the one now before us, the victim's credibility was the only
real issue at trial and counsel repeatedly or entirely failed to object to the introduction of testimony
on the truthfulness and credibility of the victim's allegations. See Sessums, 129 S.W.3d 242; Miller,
757 S.W.2d 880; Garcia, 712 S.W.2d 249. Although the court in the Garcia case did have the
benefit of evidence developed at a post-trial hearing on the ineffective assistance claim, both the
Sessums and Miller cases assessed the ineffective assistance claim on the bare and undeveloped trial
records on direct appeal. Compare Sessums, 129 S.W.3d 242, and Miller, 757 S.W.2d 880, with
Garcia, 712 S.W.2d 249.

 At oral argument, the State argued that the sole defense strategy was to walk the fine line
between showing that the victim was lying and not alienating the jury through "trashing" the victim. 
We do not see how the failure to object to inadmissible testimony from all of the witnesses that the
victim was truthful would play any role in a strategy of attempting to prove the complainant was
lying. Where counsel's strategy is premised on an incorrect understanding of the law, we need not
defer to that as a reasonable strategy. Cf. Robertson, 187 S.W.3d at 484. We have previously stated,
in regard to pervasive testimony about the truthfulness of a complainant's allegations: "There is no
conceivable strategy or tactic that would justify allowing this testimony in front of a jury." Sessums,
129 S.W.3d at 248. Indeed, as our sister court has stated, "we can glean no sound trial strategy in
defense counsel's failure to object to the extensive, inadmissible testimony concerning the only real
issue at trial -- complainant's credibility." Miller, 757 S.W.2d at 884. 

 Fuller's counsel's conduct in allowing the State unfettered and unchecked bolstering of the
victim was so outrageous that no competent attorney would have engaged in it. See Thompson,
9 S.W.3d at 814; cf. Goodspeed v. State, 187 S.W.3d 390, 396 (Tex. Crim. App. 2005) (Holcomb,
J., dissenting) ("I do not believe there is anything [trial counsel] could say under these circumstances
to show that his actions were the product of a sound trial strategy."). Given the context of the
trial--that Fuller's entire defense was that J.W.'s allegations were false and, yet, Fuller's counsel
allowed every State's witness to testify to the truthfulness and credibility of J.W.'s allegations--and
judging counsel's performance by the totality of the representation, the record affirmatively
demonstrates counsel's conduct falls outside the wide range of reasonable representation and is
objectively deficient. 

 Moreover, these deficiencies denied Fuller a fair trial. See Bridge v. State, 726 S.W.2d 558,
571 (Tex. Crim. App. 1986). In the prejudice question, we examine counsel's errors not as isolated
incidents, but in the context of the overall record. Ex parte Menchaca, 854 S.W.2d 128, 132 (Tex.
Crim. App. 1993). These were not isolated incidents; counsel's errors pervaded and prejudiced the
entire defense. Cf. McFarland v. State, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992) ("[I]solated
instances in the record reflecting errors of omission or commission do not render counsel's
performance ineffective . . . ."). Counsel even failed to object when the State emphasized the
objectionable testimony to the jury during closing argument. During closing argument, the State told
the jury that J.W.'s teacher knows kids of good quality; that Huff, with "many, many years
experience" "said that he believed - - believed her beyond a reasonable doubt. That's credible"; that
Hunt is experienced in these matters, that she has trained others "to pick up on whether people are
being credible," and that J.W. "was credible and truthful to her"; and, finally, that "Character, that's
what this case is about. It's about character, the type of person that you have." In both Miller and
Sessums, the courts considered, in assessing prejudice, that the State had emphasized to the jury,
during closing argument, the various witnesses' belief in the complainants' truthfulness and
credibility. See Sessums, 129 S.W.3d at 248; Miller, 757 S.W.2d at 884. 

 This case was a swearing match between the complainant and Fuller, who denied that he had
oral sex with the complainant or exposed himself to her. The State summarized the issue when it
asked Fuller, "Does it boil down to your word versus [J.W's] word?" Fuller's response was, "My
word, yeah, the truth, yes." Markeith Wallace, who had fathered a child by J.W., testified J.W. told
him that nothing happened between her and Fuller. Joyce Allen testified that J.W. at first told her
she had been raped by Fuller, but on further questioning, J.W. said only that Fuller accidentally
walked in on her while she was taking a shower. She further testified J.W. said she would do
whatever she could to get Fuller away from her mother. In addition, J.W. signed an affidavit of
nonprosecution stating, "I believe that justice will be better served if all charges arising out of this
transaction are dismissed . . . ." The only real issue in this case was the credibility of the witnesses,
in particular the complaining witness, J.W. The State's case-in-chief consisted of the testimony of
J.W. and four witnesses, each of whom testified in some manner that J.W. was a truthful and credible
witness. Under these circumstances, we find, as in Miller and Sessums, there is a reasonable
probability that, but for counsel's deficient performance, the result of the trial would have been
different. We find that Fuller's counsel's representation so undermined the proper functioning of the
adversarial process that the trial cannot be relied on as having produced a just result. See Strickland,
466 U.S. at 686, 688; Sessums, 129 S.W.3d at 248 ("[T]here is a reasonable probability that, but for
counsel's error in failing to object to extensive, inadmissible, and critical testimony, the result of the
proceeding would have been different."). 

IV. Conclusion

 Fuller's points of error concerning legal sufficiency and speedy trial are overruled. Fuller has
met his burden on the points of error asserting ineffective assistance of counsel; those points of error
are sustained. Since the ineffective assistance issue is dispositive, we need not address Fuller's
remaining points of error. 

 We reverse the judgment and remand the case for a new trial. 



 Jack Carter

 Justice


Date Submitted: March 28, 2007

Date Decided: May 15, 2007


Publish

 
1. Fuller was incarcerated from December 2001 to April 2002 and then again from May 2005
through trial in December 2005. On October 4, 2005, with still no trial setting, Fuller wrote a letter
from jail to the judge requesting release on personal recognizance because the "state was not ready"
and "this case is forty-five months old and since my jury trial was passed over again." Indeed, in the
letter, while Fuller dances around the issue of the lengthy delay, he ultimately seeks only one
remedy: release from custody. He never asks for trial, and he never asks that the case be dismissed. 
Neither did Fuller's trial counsel raise the issue. 
2. Although the sexual assault statute has been amended several times since Fuller was indicted
in November 2001 for acts alleged to have occurred on or about May 1, 2001, no changes have been
made to the subsection relevant to this appeal.
3. Fuller did file a pro se motion for new trial to develop evidence on the ineffective assistance
of counsel claim. His first court-appointed appellate attorney requested a hearing on the motion, but
the court scheduled the hearing for a date four days after the last date on which such a hearing must
be held. See State ex rel. Cobb v. Godfrey, 739 S.W.2d 47, 48-49 (Tex. Crim. App. 1987). Counsel
did not object. Counsel later withdrew for unrelated reasons, and the court appointed Fuller a second
appellate counsel shortly before the scheduled hearing. When this second counsel applied for a bench
warrant to deliver Fuller to the hearing, the court noted that the motion for new trial had been
overruled by operation of law. No hearing was ever held.