TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00470-CR





Gary Hampton, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 003476, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING







O P I N I O N



 Appellant Gary Hampton appeals his conviction for indecency with a child by contact.
See Tex. Pen. Code Ann. § 21.11(a)(1) (West 2003). (1) The jury found appellant guilty and assessed
his punishment at seven years' imprisonment but recommended probation. The trial court suspended
the imposition of the sentence and placed appellant on probation subject to certain conditions.


Points of Error

 Appellant advances two points of error. He contends that there was a violation of (1)
his federal and (2) state constitutional rights against self-incrimination when the trial court, over
objection, permitted the State to cross-examine him before the jury on his post-arrest silence to law
enforcement personnel. Appellant relies upon the Fifth and Fourteenth Amendments to the United
States Constitution and article I, section ten of the Texas Constitution. 

Facts

 We will briefly discuss the facts to place the points of error in proper perspective. 
In February 2000, appellant lived in his rural Travis County home with his fiancée, Shelly Bland, (2)
and her five-year-old son, Tyler. A few days before the date of the alleged offense, Shelly and her
friend, Rebecca Brannon, left on a trip to Mexico. Appellant then received an invitation to join a
group of friends at a party in the Warehouse District of Austin on Friday night, February 25. 
Appellant was caring for Tyler and knew that he had to find a babysitter. Appellant contacted Deidre
Loftice, an acquaintance of his and Shelly's, and a friend of Rebecca Brannon. Appellant understood
Loftice had a daughter who was interested in babysitting. After several conversations, it was decided
that Loftice's twelve-year-old daughter, A.G., and her eleven-year-old friend, T.K., would babysit
Tyler on Friday night. It was agreed that appellant would take the girls home the next day, or that
Loftice, who had been invited to the party by appellant, could pick them up after the party.

 Appellant was feeding Tyler supper when Loftice and the two girls arrived at
appellant's home on Friday evening. Loftice told appellant that she had other plans for the evening
but she would call him later if she decided to join the party. Appellant then went to the party leaving
the girls in charge of Tyler.

 After they put Tyler to sleep in his room upstairs, A.G. testified that she and T.K.
eventually went to bed in the downstairs bedroom. After 2:00 a.m. on Saturday morning, A.G.
awoke and saw appellant standing in the doorway with Tyler. He said: "Look, there they are. 
They're sleeping. Don't worry." Appellant and Tyler then left. A short time later, according to
A.G., appellant returned to the bedroom, knelt by the bed, and began rubbing her leg with his hands. 
He eventually worked his hand into her shorts and fondled her vaginal area, her "privates." A.G.
turned and twisted and then hit appellant with her shoulder while turning. At this point, appellant
rose and left the room.

 A.G. asked T.K. if she had seen what appellant did and T.K. acknowledged that she
had seen appellant in the room. First, the girls hid in the closet. T.K. then went to the kitchen and
got the cordless telephone. She called her father, Greg Keville, and told him that appellant had
touched A.G. on her leg and they wanted to go home. Unable to reach Loftice by telephone, Keville
drove to her house, where he found her asleep with his stepson, Jaome Brasher, Loftice's live-in
boyfriend. These three drove to appellant's house and without disturbing appellant took the girls
from the living room and left the house.

 They stopped to discuss what action to take next. After discarding the suggestion of
returning and beating up appellant, they telephoned the police. A sheriff's deputy or deputies (3)
arrived at the rural intersection where they were parked. Loftice testified that while the officer was
there, A.G. told her that appellant had not only touched her leg but touched her vaginal area. A.G.
testified that she told her mother this when they stopped at a convenience store on the way home. 
Loftice denied that they ever stopped at a convenience store.

 T.K. confirmed that appellant first came with Tyler to the bedroom where she was
asleep with A.G. in the early morning hours of February 26, 2000. T.K. stated that appellant later
returned to the room, knelt beside the bed where A.G. was sleeping and clapped his hands together. 
She admitted that she could not see what appellant then did with his hands, but A.G. turned and
twisted and nudged her. 

 After some inconsistencies, T.K. stated that when appellant left the room, A.G.
reported to her that appellant "touched her" and "touched her on the leg"; and that it was only later
in the car that she heard A.G. tell her mother that appellant had touched her vaginal area. Loftice testified that she brought the matter to Shelly Bland's attention upon Shelly's
return from Mexico. Loftice stated that she had brought a civil suit against appellant seeking money
damages. She added, "What I want is for him to get into trouble. That's what I want to make sure
of, but we haven't derived [sic] at some dollar amount."

 Deputy sheriff Michael Villanueva testified that he responded to the call in the early
morning hours of February 26, 2000. He talked with the adults or "parents" at a rural road
intersection. He did not talk to the young girls. Villanueva cautioned the group not to return to
appellant's home. He informed the group that he would make a report to a detective, who in turn
would contact them. Villanueva made no effort to contact appellant.

 Detective Nancy Zimmerman of the Travis County Sheriff's Office related that she
made appointments for the girls at the Children's Advocacy Center, took possession of videotapes
made there, and took a statement from Loftice. Zimmerman did not testify that she contacted or
attempted to contact appellant. 

 Appellant testified that he returned home in the early morning hours of February 26,
2000. He found A.G. and T.K. asleep in the downstairs bedroom. Appellant denied that he appeared
with Tyler in that bedroom as described by A.G. and T.K. Appellant stated that he did observe that
one of the girls was near the edge of the bed. He entered the room to push her to the middle so that
she would not fall off the bed. As he did so, appellant reported that he stepped on something. He
knelt down to see what it was and discovered a leaf from a flower arrangement in the room. He
placed the leaf on a window sill. Appellant pushed the girl through the covers towards the middle
of the bed. He went upstairs to check on Tyler and then went to bed. When appellant got up the next
morning, he found that the girls had left. He discovered a recorded message on his telephone from
T.K.'s mother that a family emergency had arisen and the girls had been taken home. Appellant
denied the offense charged and denied that he was intoxicated.

 There was no testimony concerning the circumstances surrounding appellant's arrest. 
The record shows that an arrest warrant was issued on April 13, 2000, and on the same date,
appellant executed a personal bond. The indictment was returned on May 31, 2000. At his March
2002 trial, appellant appeared with counsel and entered a plea of not guilty. This background
becomes important in light of appellant's post-arrest silence contentions and the State's response on
appeal that appellant was never arrested. 


The Alleged Error

 The points of error upon which appellant relies on appeal arose at trial. On direct
examination, appellant stated that several days after Shelly returned from Mexico, she questioned
him about the Saturday morning incident. Shelly had talked to Loftice. Appellant re-enacted for
Shelly his actions that morning. The eucalyptus leaf upon which he had stepped was still in the
window sill. (4) On cross-examination, the record reflects:


Q. Have you had any conversation with anyone else about this?


A. Yeah. I talked to a lot of people about this.



 Thereafter, the prosecutor approached the bench and inquired of the trial court
whether she could ask if appellant had ever given a statement to the police department. The trial
court assumed that the State's request was based on the answer to the question asked. Appellant
objected on the basis of the "Fifth Amendment." The trial court cautioned that the State would not
be able to establish that appellant had earlier invoked his rights under the Fifth Amendment to the
United States Constitution, but a question could be asked because appellant "opened it up" by the
answer to the earlier question. Appellant's counsel pointed out that it was the State's question on
cross-examination.

 The prosecutor then inquired if she could ask if appellant "refused" to give a
statement to the police. The trial court rejected that request because a refusal would be an invocation
of appellant's rights. The trial court stated that it would allow the first proposed inquiry. 
Appellant's counsel objected that to indicate appellant did not give a statement to the police would
infer refusal based on the Fifth Amendment and article I, section ten of the Texas Constitution. The
objection was overruled.

 Thereafter, in the presence of the jury, the prosecutor inquired:


 Mr. Hampton, did you ever give a statement or tell what you are telling us to
Nancy Zimmerman or anyone with the Travis County Sheriff's?




 No, I did not.




Preservation of Error

 To preserve error for review, a party may make a timely, specific objection "unless
the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A). Where the
proper ground of exclusion was obvious to the trial court and opposing counsel, no waiver results
from a general or imprecise objection. Zillender v. State, 557 S.W.2d 515, 517 (Tex. Crim. App.
1977). Moreover, when the trial court hears objections to offered evidence out of the presence of
the jury and rules that such evidence is admitted, such objection shall be deemed to apply to such
evidence when it is admitted before the jury without the necessity of repeating those objections. Tex.
R. Evid. 103(a)(1); Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). We conclude
that appellant preserved error for review. The State does not contend otherwise. 


Discussion

 As a general rule, when an accused voluntarily takes the stand before a jury, he is
subject to the same rules as any other witness in that he may be impeached, contradicted and cross-examined as to new matters. Feldman v. State, 71 S.W.3d 738, 755 (Tex. Crim. App. 2002); Bryan
v. State, 837 S.W.2d 637, 643 (Tex. Crim. App. 1992); Huffman v. State, 746 S.W.2d 212, 219 (Tex.
Crim. App. 1988); Sanchez v. State, 707 S.W.2d 575, 577 (Tex. Crim. App. 1986); Brown v. State,
617 S.W.2d 234, 236 (Tex. Crim. App. 1981); Williams v. State, 607 S.W.2d 577, 578 (Tex. Crim.
App. 1980); Brumfield v. State, 445 S.W.2d 732, 735, 741-42 (Tex. Crim. App. 1969) (on State's
motion for reh'g). Where there are overriding constitutional or statutory prohibitions, however, the
accused may not be treated as just another witness. Alexander v. State, 740 S.W.2d 749, 763 (Tex.
Crim. App. 1987); Sanchez, 707 S.W.2d at 577; Lopez v. State, 990 S.W.2d 770, 777 (Tex.
App.--Austin 1999, no pet.). One of the limitations on the prosecution's cross-examination of an
accused may be the constitutional privilege against self-incrimination. Sanchez, 707 S.W.2d at 582;
Raney v. State, 958 S.W.2d 867, 876 (Tex. App.--Waco 1997), pet. dism'd, improvidently granted,
982 S.W.2d 429 (Tex. Crim. App. 1998). The privilege ceases only when liability to punishment
no longer exists. Bryan, 837 S.W.2d at 643.

 The use of a defendant's post-arrest silence is akin to a comment on his failure to
testify at trial because it attempts to raise an inference of guilt arising from the invocation of a
constitutional right. Dinkins v. State, 894 S.W.2d 330, 556 (Tex. Crim. App. 1995).

 In Veteto v. State, 8 S.W.3d 805 (Tex. App.--Waco 2000, pet. ref'd), the court wrote:


Under the U.S. Constitution, the State cannot use the post-arrest silence of an
accused, after assurances such as Miranda warnings, to impeach an explanation
subsequently offered at trial. Doyle v. State [of Ohio], 426 U.S. 610, 618, 96 S. Ct.
2240, 2245, 49 L. Ed. 2d 91 (1976); see also Greer v. Miller, 483 U.S. 756, 763, 107
S. Ct. 3102, 3107, 97 L. Ed. 2d 618 (1987). After attempts by lower courts to
broaden the language of Doyle, the Supreme Court reiterated its prohibition of the
use of post-arrest, post-Miranda silence against the accused for impeachment
purposes. Fletcher v. Weir, 455 U.S. 603, 607, 102 S. Ct. 1309, 1312, 71 L. Ed. 2d
490 (1982). The decision was then left to the states to determine under their rules
what was proper impeachment. Id.; Sanchez v. State, 707 S.W.2d 575, 578 (Tex.
Crim. App. 1986). Based on two rationales, the Texas Court of Criminal Appeals
determined that in addition to the Doyle/Fletcher prohibition, post-arrest, pre-Miranda silence also may not be used against an accused at trial. Id. First, the Court
reasoned, the use would violate the accused's right to be free from self incrimination
under Article I, Section 10 of the Texas Constitution. Id. Second, the use would be
improper impeachment under the evidentiary rules since, absent actual inconsistency,
post-arrest silence is not probative as prior inconsistent conduct. Id. at 578, 582.



Id. at 810. (5)

 In Harris v. State, 866 S.W.2d 316 (Tex. App.--San Antonio 1993, pet. ref'd), the
court explained the development of the law since Doyle and Sanchez by stating:


In Texas, post-arrest silence may not be used against a defendant, even if he has not
been warned pursuant to Miranda. Sanchez v. State, 707 S.W.2d 575, 580 (Tex.
Crim. App. 1986); see also Cuellar v. State, 613 S.W.2d 494, 495 (Tex. Crim. App.
[Panel Op.] 1981); Womack v. State, 834 S.W.2d 545, 546 (Tex. App.--Houston
[14th Dist.] 1992, no pet.); Juhasz v. State, 827 S.W.2d 397, 405 n.3 (Tex.
App.--Corpus Christi 1992, pet. ref'd). Even when the defendant testifies, he may
not be cross-examined about his post-arrest silence unless it is first established that
he made a post-arrest inconsistent statement. Turner v. State, 719 S.W.2d 190, 193
(Tex. Crim. App. 1986).



Id. at 320 (emphasis added).

 In Turner, 719 S.W.2d at 192-93, it was held error to permit the State to cross-examine a defendant regarding his post-arrest silence as to his alibi without first establishing that the
defendant made an inconsistent statement during that time. In Turner, like the instant case, the
prosecutor asked the defendant if he had told "any law enforcement" about his alibi. In Sanchez, 707
S.W.2d at 582, the court stated:


Given the inherent ambiguity of post-arrest silence, such silence cannot be considered
inconsistent with defensive matters later raised at trial. Absent a showing of actual
inconsistency, post-arrest silence is not probative of prior inconsistent conduct;
therefore, impeachment through the use of such evidence is improper.

 In Bhakta v. State, it was held that the prosecution may not use a defendant's post-arrest silence to impeach or discredit a defendant's exculpatory theory, including a self-defense claim
elicited for the first time at trial. 981 S.W.2d 293, 296 (Tex. App.--San Antonio 1998, pet. ref'd) 
(citing Dinkins, 894 S.W.2d at 356). And in Johnson v. State, the prosecutor's question to the
defendant during cross-examination, asserting that the defendant did not tell the police that the
murder victim came at him with a bottle, constituted an improper comment on the defendant's post-arrest silence in violation of the state constitution. 83 S.W.3d 229, 231 (Tex. App.--Waco 2002,
pet. ref'd).

 In the instant case, there was no showing of a prior inconsistent statement or conduct
on appellant's part and appellant had not opened the door to the matter on direct examination. Yet,
the State used his post-arrest silence against him to discredit and impeach him on cross-examination
by demonstrating to the jury that he had never told the investigating officer or any sheriff's deputy
the exculpatory theory he related from the witness stand. This was a violation of appellant's rights
under the Texas Constitution. Tex. Const. article I, § 10. Appellant's counsel timely objected on
this basis and preserved error. Tex. R. App. P. 33.1. Bhakta, 981 S.W.2d at 296.

 The error discussed resulted in a violation of appellant's state's constitutional right
against self-incrimination. We are required to reverse the conviction unless we determine beyond
a reasonable doubt that the error did not contribute to the conviction or punishment. Tex. R. App.
P. 44.2(a); Dinkins, 894 S.W.2d at 356. When reviewing the record for harm, we examine a number
of factors--the source and nature of the error, the extent to which it was emphasized by the State,
the weight a juror would probably place upon the error, and whether finding the error harmless
would encourage the State to repeat it with impunity. Dinkins, 894 S.W.2d at 356 (citing Harris v.
State, 790 S.W.2d 568, 597 (Tex. Crim. App. 1989)); Veteto, 8 S.W.3d at 813. 

 The source of the error was the prosecutor's insistence on asking the improper
question described. We have nothing in the record to explain why a prosecutor would depart from
established rules and question appellant about his post-arrest silence. See Johnson, 83 S.W.3d at
232. There was a sharp conflict in the evidence as to the actual offense. Appellant's exculpatory
theory rested heavily upon his credibility and the State improperly impugned his trial explanation
offered before the jury. Not satisfied with that impeachment of appellant, the prosecutor sought to
show on cross-examination of appellant's wife, Shelly, that after she heard appellant's version of the
events in question, she failed to report that exculpatory version to the sheriff's office. The prosecutor
further showed that in the deposition she gave in the civil lawsuit, Shelly failed to mention the
eucalyptus leaf and stem that appellant claimed to have stepped on in the bedroom. (6) Moreover, the
thrust of the State's jury argument was that based on the evidence, appellant's exculpatory theory
was a recent fabrication.

 Credibility was a crucial issue for the jury. After their deliberations began, the jury
deadlocked on the issue of guilt or innocence and reported to the trial court that it could not reach
a verdict. The trial court gave an Allen v. United States, 164 U.S. 492, 501-02 (1896) or "dynamite"
charge to the jury before it reached a verdict. To hold the instant post-arrest silence error harmless
will only encourage prosecutors to repeat the constitutional error with impunity. We are unable to
conclude beyond a reasonable doubt that the error did not contribute to appellant's conviction. We
sustain appellant's second point of error.

 The judgment of conviction is reversed and the cause is remanded to the trial court.



 __________________________________________

 John F. Onion, Jr., Justice

Before Justices Kidd, Patterson and Onion*

Reversed and Remanded

Filed: May 8, 2003

Publish


















* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1.   The current code is cited for convenience.
2.   By the time of the trial in March 2002, appellant and Shelly were married.
3.   There was some testimony that there were two deputies. When Deputy Michael Villanueva
testified, he did not indicate that he was accompanied by another officer.
4.   The leaf was introduced into evidence as defense exhibit number nine.
5.   The Miranda referred to is Miranda v. Arizona, 384 U.S. 436 (1966).
6.   Shelly testified that she sought to supply the omission immediately after arriving home
from the deposition. This was later confirmed by her lawyer who testified concerning the correction.