**Roderick Glen JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10-01-142-CR.**

Court of Appeals of Texas, Waco.

July 17, 2002.

---

Paul C. Nugent, Foreman, DeGeurin, Nugent & Gerger, Houston, for appellant.

Charles A. Rosenthal, Jr., Harris County Dist. Atty., Dan McCrory, Harris County Asst. Dist. Atty., Houston, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

A jury found Roderick Glen Johnson guilty of murder. The jury found that he committed the offense "under the immediate influence of sudden passion" and sentenced him to twelve (12) years' imprisonment. *See* TEX. PEN.CODE ANN. § 19.02(d) (Vernon 1994). In two points, Johnson contends that the trial court erred by refusing to grant him a mistrial following the prosecutor's improper comment on his

post-arrest silence in violation of the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 10 of the Texas Constitution.

## Background Facts

There were six eyewitness accounts of the altercation between Johnson and the victim. Johnson himself testified that he had a physical altercation with the victim. He testified that during the fight, the victim retrieved a bottle from across the street and began running back towards him. Johnson said that he then reached back and picked up a gun and fired it, killing the victim. At least three other eyewitnesses to the shooting testified that they did not see a bottle, glass, or other weapon in the victim's hand. At trial, Johnson admitted to shooting the victim, but argued he acted in self-defense.

## Post–Arrest Silence

 A comment on a defendant's post-arrest silence violates the rights of the accused under the Fifth Amendment of the United States Constitution and article I, section 10 of the Texas Constitution. *See Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *Dinkins v. State,* 894 S.W.2d 330, 356 (Tex. Crim.App.1995); *Sanchez v. State,* 707 S.W.2d 575, 582 (Tex.Crim.App.1986); *Mendoza v. State,* 959 S.W.2d 321, 324 (Tex.App.-Waco 1997, pet. ref'd). Under the U.S. Constitution, the State cannot use the post-arrest silence of an accused, after assurances such as *Miranda* warnings, to impeach an explanation subsequently offered at trial. *See Doyle,* 426 U.S. at 618, 96 S.Ct. at 2245. The Texas Court of Criminal Appeals has determined that, in addition to the *Doyle* prohibition, post-arrest, *pre-Miranda* silence also may not be used against an accused at trial. *See Sanchez,* 707 S.W.2d at 582.

During the State's cross-examination of Johnson, the following exchange occurred:

Q (Prosecutor): And when you were at the homicide office several hours after the shooting you had the opportunity to talk to the detectives; is that correct?

A (Johnson): I had the opportunity to what?

Q: To talk to the detectives; Is that correct? They took you into a room and they asked you ... they told you your rights and they asked you if you wanted to tell them what happened.

A: They read me my rights later, but, yes, they asked me repeatedly to tell them what happened.

Q: And *at that time you did not take the opportunity to tell them* that the defendant (sic) had come toward you with a weapon, did you?

(Emphasis added). At this time, Johnson's counsel objected and the trial court sustained his objection. The court then instructed the jury: "Ladies and gentlemen, please disregard the last question by the prosecutor." Johnson's request for a mistrial was denied by the court. The prosecutor did not again comment on Johnson's post-arrest silence during cross-examination or closing argument.

The record clearly shows that the State improperly commented on Johnson's post-arrest silence in violation of the United States and Texas Constitutions. We now consider whether the trial court's instruction cured the prejudice.

## Did the Instruction Cure the Prejudice?

 Potential prejudice resulting from a question concerning post-arrest silence might be cured by an instruction to disregard. *See Waldo v. State,* 746 S.W.2d 750, 754 (Tex.Crim.App.1988). An instruction to disregard will be presumed effec-

tive unless the facts of the case suggest the impossibility of removing the impression produced on the minds of the jury. *Id.; see also Veteto v. State*, 8 S.W.3d 805, 811 (Tex.App.-Waco 2000, pet. ref'd). The effectiveness of a curative instruction is determined on a case-by-case basis. *See Veteto*, 8 S.W.3d at 811. Although not specifically adopted as definitive or exhaustive, the courts have looked to several factors to determine whether an instruction to disregard cured the prejudicial effect. *See Waldo*, 746 S.W.2d at 754; *see also Veteto*, 8 S.W.3d at 811; *Fletcher v. State*, 852 S.W.2d 271, 275 (Tex.App.-Dallas 1993, pet. ref'd). They are as follows: 1) the nature of the error; 2) the persistence of the prosecution in committing the error; 3) the flagrancy of the violation; 4) the particular instruction given; 5) the weight of the incriminating evidence; and 6) the harm to the accused as measured by the severity of sentence. *Id.*

### Nature of the Error

Although the nature of the error is not such that an instruction can never cure it, a question infringing on Johnson's constitutionally protected rights is serious in nature. *See Veteto*, 8 S.W.3d at 811. We have nothing to explain why a prosecutor would depart from the established rules and question a defendant about his post-arrest silence. *See generally Wilson v. State*, 938 S.W.2d 57, 62 (Tex.Crim.App. 1996) (court unable to understand why prosecutor departed from the well established rules for jury argument and made blatantly improper argument).

### Persistence and Flagrancy

Unlike the repeated improper comments in *Veteto* and *Mendoza*, the State did not repeat its improper question concerning Johnson's post-arrest silence. *Veteto*, 8 S.W.3d at 811; *Mendoza*, 959 S.W.2d at 324–25. The State did not broach this subject again during cross-examination, nor did the State comment on Johnson's post-arrest silence during the remainder of the trial. Therefore, we do not find any persistence or flagrancy by the State in the present case.

### Particular Instruction Given

The trial court instructed the jurors as follows: "Ladies and gentlemen, please disregard the last question by the prosecutor." The courts have found similar instructions adequate to cure the error. *See Waldo*, 746 S.W.2d at 755–56 ("Jury is instructed to disregard the last comment of the witness."); *Mendoza*, 959 S.W.2d at 324 ("I again instruct the jury that they will not consider the last statement made by the State's attorney for any purpose whatsoever."); *Fletcher*, 852 S.W.2d at 275 ("It is going to be assumed by the court that the jury is going to follow the court's instructions, not to consider that, and that line of questions."). *But compare Veteto*, 8 S.W.3d at 811–12 ("You'll disregard," found to be inadequate instruction). We find the trial court's instruction adequate under the circumstances.

### Weight of the Evidence

The evidence is uncontradicted that Johnson shot the victim. The question at trial was whether he acted in self-defense. Johnson claims that he shot the victim because the victim was approaching him with what appeared to be a glass bottle in his hand. Johnson argues that his self-defense theory turns completely on his credibility as a witness, and thus, any questioning regarding his post-arrest silence weighs heavily on the evidence and the credibility of his self-defense theory.

Numerous eyewitnesses to the shooting, however, testified that the victim did not have a weapon, bottle, or glass in his hand,

thus undermining Johnson's defense. Specifically, Keith Fountain testified that he did not see a glass in the victim's hand during the fight. Likewise, Jermaine Shaw testified that he did not see any weapon in the victim's hand during the fight. Donovan Yarbrough, another eyewitness to the altercation, testified that he never saw a glass or a weapon in the victim's hand during the fight. As such, the totality of the evidence: 1) could support the jury's conclusion that self-defense was unjustified; and 2) supports the finding that the question on Johnson's post-arrest silence was not of a material character calculated to influence or affect the jury adversely to Johnson. *See Waldo*, 746 S.W.2d at 756.

### Severity of Punishment

After an affirmative finding on the special issue, the jury sentenced Johnson to twelve (12) years' imprisonment. The range of punishment after affirmatively answering the special issue was two (2) to twenty (20) years' imprisonment. Considering the nature of the offense of second-degree murder, we are unable to conclude that the improper question increased the severity of the sentence. *See Veteto*, 8 S.W.3d at 812.

### Summary of Factors

The improper question on Johnson's post-arrest silence is serious in nature, but not such that an instruction cannot cure it. *Id.* at 811. Because the State did not repeat its question, the instruction was adequate, and there is no indication that the jury's verdict or sentence was influenced by the improper question, we find that the instruction cured the prejudicial effect. Accordingly, the trial court did not err by overruling the motion for mistrial. Points one and two are overruled.

The judgment of the trial court is affirmed.