Ex parte Twine

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-011-CR

EX PARTE GARY MATTHEW TWINE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

OPINION

------------

Introduction

The State of Texas appeals from the trial court’s judgment granting Gary Matthew Twine a writ of habeas corpus barring his further prosecution based on the ground of double jeopardy.  The trial court ruled that Twine’s retrial was jeopardy barred because the prosecution provoked a mistrial through manifestly improper prosecutorial misconduct.  In a single point, the State contends that Twine’s retrial is not barred by double jeopardy.  We will reverse and render.

Factual Background and Procedural History

Twine was charged with sexual assault.  His case proceeded to trial before a jury on July 16, 2002.  After the State rested on July 17, Twine took the stand on his own behalf.  The following exchange took place at the beginning of Twine’s cross-examination:

Q. [By the prosecutor] You’re comfortable with all the answers you’ve just given?

A.   Yes, sir.

Q. You want to change, alter, or amend anything you just told this jury?

A. No, sir.

Q. You have to let me finish my questions before you start answering.  Okay?

A. Yes, sir, please excuse me.

Q. 
 Now you and I, besides maybe casual greetings in court, have never got to sit down and talk about what you just told this jury, have we?
  [Emphasis supplied.]  

At that point, defense counsel objected to the prosecutor’s question as a violation of Twine’s Sixth Amendment rights and moved for an instruction to disregard.
  The trial court sustained the objection and instructed the jury:  “Ladies and gentlemen, you’ll disregard the last comment by the prosecutor.  It’s as if it was not said.  And you’ll retire to the jury room.”  Outside the jury’s presence, defense counsel then moved for a mistrial on the ground that the prosecutor’s question was a comment on Twine’s post-arrest silence.  The trial court granted the motion. 

Thereafter, Twine filed an application for a writ of habeas corpus, contending that his retrial was jeopardy barred because the prosecutor had deliberately or recklessly provoked the mistrial by his manifestly improper question.  During the writ hearing, Twine attempted to introduce into evidence the reporter’s record from 
State v. Swanda Marie Lewis
.
(footnote: 1)  The 
Lewis
 case had also ended in a mistrial after the same prosecutor as in Twine’s case had made a different comment about Lewis’s post-arrest silence.  The trial court sustained the State’s relevance objection to the 
Lewis
 reporter’s record and refused to consider it in Twine’s habeas proceeding.  On appeal from that hearing, we held that the trial court erred by excluding the 
Lewis
 reporter’s record because it was relevant to whether the prosecutor was conscious of the risk that his question in Twine’s case could cause a mistrial.  
Ex parte Twine
, 111 S.W.3d 664, 667 (Tex. App.—Fort Worth 2003, pet. ref’d) (
Twine I
).  We remanded the case to the trial court for further proceedings.  
Id.
 at 669.

Following our decision in 
Twine I,
 the court of criminal appeals issued its decision in 
Ex parte Peterson,
 in which it clarified the standard for reviewing a double jeopardy habeas application based on prosecutorial misconduct.  117 S.W.3d 804, 816-17 (Tex. Crim. App. 2003).  After a second hearing at which it had the benefit of the 
Peterson
 decision, the trial court granted Twine’s habeas application and made the following fact findings in support of its ruling:

1.  Manifestly improper prosecutorial misconduct provoked the mistrial;

2.  A mistrial was required because the prejudice produced from that misconduct could not be cured by an instruction to disregard;

3.  The prosecutor engaged in that misconduct with the intent to goad the defendant into requesting a mistrial, or with conscious disregard for a substantial risk that the trial court would be required to declare a mistrial.  

This appeal followed.  In its sole point on appeal, the State contends that Twine’s retrial is not jeopardy barred because each of these findings is erroneous.  

Standard of Review

In reviewing a trial court’s decision to grant or deny habeas relief, we review the facts in the light most favorable to the trial court’s ruling and must uphold that ruling absent an abuse of discretion.  
Id. 
at 819.  We afford almost total deference to the trial court’s determination of historical facts supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor.  
Id
.  We afford the same level of deference to the trial court’s rulings on “application of law to fact questions” or “mixed questions of law and fact,” if the resolution of those questions turns on an evaluation of credibility and demeanor.  
Id
.  However, we review de novo those “mixed questions of law and fact” that do not depend upon credibility and demeanor.  
Id
.

The purpose of the double jeopardy clause is to “protect a criminal defendant from repeated prosecutions for the same offense.”  
Id. 
at 810 (citing 
Oregon v. Kennedy
, 456 U.S. 667, 671, 102 S. Ct. 2083, 2087 (1982)); 
Bauder v. State
, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996) (
Bauder I
).  
In determining whether the double jeopardy clause prohibits retrial after a defendant’s successful mistrial request on the ground of prosecutorial misconduct, the trial court must decide:  (1) whether manifestly improper prosecutorial misconduct provoked the mistrial; (2) whether the mistrial was required because the prejudice produced from the misconduct could not be cured by an instruction to disregard; and (3) whether the prosecutor engaged in the misconduct with the intent to goad the defendant into requesting a mistrial or with conscious disregard for a substantial risk that the trial court would be required to declare a mistrial.  
Peterson,
 117 S.W.3d at 816-17.  The habeas applicant bears the burden of proving all three prongs of this inquiry by a preponderance of the evidence.  
Id.
 at 818.

It is only when the defendant is compelled to move for a mistrial because the prosecutor deliberately or recklessly “crossed ‘the line between legitimate adversarial gamesmanship and manifestly improper methods’ . . . that rendered trial before the jury unfair to such a degree 
that no judicial admonishment could have cured it”
 that the double jeopardy provision bars a retrial.  
Id.
 at 816 (emphasis supplied) (quoting
 State v. Lee,
 15 S.W.3d 921, 923 (Tex. Crim. App. 2000)); 
accord Ex parte Bauder,
 974 S.W.2d 729, 732 (Tex. Crim. App. 1998) (
Bauder II
).  Under this rule, the prosecutor is not accountable for mistrials when the trial court need not have granted the defendant’s motion.  
Peterson,
 117 S.W.3d at 815 n.45; 
Bauder I,
 921 S.W.2d at 699.

Instruction to Disregard

We will first consider the State’s challenge to the trial court’s finding that  a mistrial was required because the prejudice produced by the prosecutor’s improper comment could not be cured by an instruction to disregard, because that inquiry is dispositive of this appeal.

The asking of an improper question, by itself, seldom warrants a mistrial; in most cases, any potential prejudice from such a question may be cured by an instruction to disregard the question.  
See Moore v. State
, 882 S.W.2d 844, 847 (Tex. Crim. App. 1994), 
cert. denied
, 513 U.S. 1114 (1995).  This principle applies to questions that can be construed as an improper comment on a defendant’s post-arrest silence.  
See
 
Moore v. State,
 999 S.W.2d 385, 405 (Tex. Crim. App. 1999), 
cert. denied,
 530 U.S. 1216 (2000); 
Dinkins v. State
, 894 S.W.2d 330, 356 (Tex. Crim. App.), 
cert. denied
, 516 U.S. 832 (1995); 
Waldo v. State,
 746 S.W.2d 750, 754 (Tex. Crim. App. 1988).  An instruction to disregard will be presumed effective unless the facts of the case suggest the impossibility of removing the impression produced on the minds of the jury.  
Waldo,
 746 S.W.2d at 754.  As the court of criminal appeals has stated,

the . . . presumption that an instruction [to disregard] generally will 
not 
cure [a] comment on [the] failure of the accused to testify . . . has been eroded to the point that it applies only to the most blatant examples.  Otherwise, the Court has tended to find the instruction to have force. 

Dinkins
, 894 S.W.2d at 356 (quoting 
Waldo
, 746 S.W.2d at 753).  The effectiveness of a curative instruction is determined on a case-by-case basis. 
 Johnson v. State
, 83 S.W.3d 229, 232 (Tex. App.—Waco 2002, pet. ref’d). 

In determining whether an instruction to disregard was effective, courts consider a nonexhaustive list of factors, including:  1) the nature of the error; 2) the persistence of the prosecution in committing the error; 3) the flagrancy of the violation; 4) the particular instruction given; 5) the weight of the incriminating evidence; and 6) the harm to the accused as measured by the severity of the sentence.  
See Waldo
, 746 S.W.2d at 754; 
see also Johnson
, 83 S.W.3d at 232; 
Fletcher v. State
, 852 S.W.2d 271, 275 (Tex. App.—Dallas 1993, pet. ref’d).  We will consider each of these factors in turn.

Nature of the Error and Flagrancy

Twine contends that the error here was egregious because it affected his constitutional rights “in an area highly protected by appellate decisions.”  A question infringing on a defendant’s constitutionally protected rights is serious in nature.  Despite the constitutional significance, however, courts have frequently found instructions to disregard effective in cases involving comments on the defendant’s post-arrest silence.  
See, e.g., Dinkins
, 894 S.W.2d at 356; 
Waldo
, 746 S.W.2d at 754; 
Johnson
, 83 S.W.3d at 233.

Further, defense counsel objected before Twine answered the question.  Thus, this is not typically the type of error that renders an instruction to disregard ineffective.  
See Moore
, 882 S.W.2d at 847; 
see also Hyett v. State
, 58 S.W.3d 826, 832-33 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d) (holding instruction to cure effective where defendant never answered the question involving post-arrest silence).

Finally, there is little, if any, evidence that the prosecutor’s question was egregious or flagrant.  The question merely referred to Twine’s post-arrest silence indirectly, if at all, and inquired only whether Twine had previously spoken with the 
prosecutor
 about the case.  The prosecutor did not infer that Twine had chosen not to talk to anyone in law enforcement or that he had chosen not to testify.  To the contrary, the detective who investigated the sexual assault allegation had previously testified that she had interviewed Twine and taken a written statement from him.  This statement was introduced into evidence before Twine took the witness stand on his own behalf, and Twine agreed that he had voluntarily spoken with the police and given a written statement.  

In light of the evidence concerning the nature and flagrance of the error, we hold that these two factors mitigate against the trial court’s finding.

Persistence

This case involved a single question followed by an objection, an instruction to disregard, and a mistrial.  Thus, there could be no persistence in the prosecutor’s misconduct.
(footnote: 2)  This was not a case in which the prosecutor continued to ask questions regarding the defendant’s post-arrest silence in the face of a warning by the court or a series of sustained objections.  Therefore, the evidence concerning this factor mitigates against the trial court’s finding.

Particular Instruction Given

The trial court gave the jury a strong admonition, saying, “Ladies and gentlemen, you’ll disregard the last comment by the prosecutor.  It’s as if it was not said.”  An instruction specifically informing the jury to disregard the last question asked by the prosecutor has been held to be adequate to cure any prejudice caused by such a question.  
Johnson, 
83 S.W.3d at 232; 
see also Waldo
, 746 S.W.2d at 755-56 (holding “[j]ury is instructed to disregard the last comment of the witness” sufficient);
 Mendoza v. State
, 959 S.W.2d 321, 324 (Tex. App.—Waco 1997, pet. ref’d) (holding instruction to the jury to “not consider the last statement made by the State’s attorney for any purpose whatsoever” adequate).  Consequently, the evidence concerning this factor mitigates against the trial court’s finding.

Weight of the Evidence

At the time of the mistrial, which occurred before the close of the evidence, some evidence of Twine’s guilt had been presented.  The victim, who used the pseudonym Sara Jensen, had testified in great detail about being sexually assaulted by Twine.  The doctor that performed the sexual assault examination on Jensen did not find any evidence of trauma; however, Jensen’s testimony was supported by some physical evidence.  For example, a vaginal swab taken a few hours after the incident revealed the presence of mineral oil, a major component in baby oil.  This was consistent with Jensen’s story that Twine had used baby oil as a lubricant during the assault. 

Jensen’s story was also corroborated by Dorothy Christopher, who was babysitting Jensen’s children that evening.  Christopher testified that Jensen called her during the evening, sounding upset, and started talking about her daughter being sick.  Christopher was confused by Jensen’s call because her daughter was healthy.  Jensen had testified that she made up a story about her daughter being sick so that Twine would let her go.  Christopher further testified that Jensen called her back ten or fifteen minutes later, sobbing hysterically, and said that she had been raped.  

Twine testified that the alleged sexual assault never occurred.  He stated that he had invited Jensen over to his house for drinks and conversation that night, but had sent her home early because he was due at work early the next morning.  In Twine’s written statement, he claimed, “I don’t recall having any kind of sex or holding her hand or anything under those conditions.  If something did happen between us, sexual contact was made, she may have dropped something in my drink.” 

On cross-examination, defense counsel asked Jensen about her financial situation.  Jensen had recently been forced to give a baby up for adoption because she could not afford to raise the child.  Jensen admitted that she had spoken to attorneys about bringing a civil suit against Twine for damages, and that they had counseled her that it would improve her chances if Twine was found guilty in criminal court.  Despite defense counsel’s suggestion that the story was fabricated, Jensen never changed her story.  

In summary, there was some evidence of Twine’s guilt, but it was not overwhelming.  Thus, we hold that the evidence pertinent to this factor mitigates neither for nor against the trial court’s finding.

Severity of Punishment

This factor is inapplicable, because the case did not proceed to a verdict.

Analysis

Most of the relevant 
Waldo 
factors, when analyzed based on the record in this case, mitigate against the trial court’s finding that a mistrial was required because an instruction to disregard would not have cured the prejudice caused by the prosecutor’s improper question.  Although the efficacy of an instruction to disregard is ordinarily a fact question,
(footnote: 3) the trial court did not mention any evidence—and our review of the record has revealed none—to support its finding that such an instruction would not have cured the prejudice caused by the prosecutor’s misconduct in this case.  Indeed, the trial court did not discuss whether an instruction to disregard would have been effective, but simply stated:

[Prong two of the 
Peterson
 analysis]—there was a mistrial required, and I realize that that is somewhat a judgment call on the part of an individual judge, but there are a few things that ought to be sacrosanct and one of them is a defendant’s post-arrest silence and that’s just my opinion and that’s the one I’m sticking with.  [Prong two], I would say yes.  

In light of the case law concerning instructions to disregard, however, we cannot agree with the trial court that a mistrial is always warranted when the issue of post-arrest silence is raised improperly.  
See Moore,
 999 S.W.2d at 405; 
Dinkins,
 894 S.W.2d at 356 (both holding that instruction to disregard comment on post-arrest silence is presumed effective except in most blatant cases); 
Waldo,
 746 S.W.2d at 752 (holding that such an instruction will be presumed effective except in extreme cases where facts suggest impossibility of removing prejudicial impression from jurors’ minds).  Further, for all of the reasons we have discussed, we hold that the evidence, when viewed in the light most favorable to the trial court’s ruling, does not support the court’s finding that the prejudice produced by the prosecutor’s misconduct here could not have been cured by the court’s instruction to disregard.

Conclusion

We sustain the State’s issues and hold that the trial court abused its discretion by granting Twine’s application for writ of habeas corpus.  We reverse the trial court’s judgment granting Twine habeas relief and render judgment denying Twine’s habeas application.
(footnote: 4)

JOHN CAYCE

CHIEF JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: September 9, 2004

FOOTNOTES
1:
No. 0778116D (Crim. Dist. Ct. No. 1, Tarrant County, Tex. Nov. 14, 2001).  

2:
The prosecutor’s comment about the defendant’s post-arrest silence in 
Lewis
 is not evidence of persistence that would have affected the jury’s ability to disregard the improper question in this case.  The jury here had no knowledge of the prosecutor’s question in 
Lewis.

3:
See Lee,
 15 S.W.3d at 926 n.9.

4:
In light of our holding with regard to this prong of the 
Peterson
 test, we need not consider the State’s remaining arguments.  
See
 
Tex. R. App. P.
 47.1.