COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-011-CR
  
  
  
EX 
PARTE GARY MATTHEW TWINE
  
  
  
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
Introduction
        The 
State of Texas appeals from the trial court’s judgment granting Gary Matthew 
Twine a writ of habeas corpus barring his further prosecution based on the 
ground of double jeopardy. The trial court ruled that Twine’s retrial was 
jeopardy barred because the prosecution provoked a mistrial through manifestly 
improper prosecutorial misconduct. In a single point, the State contends that 
Twine’s retrial is not barred by double jeopardy. We will reverse and render.
Factual Background and Procedural History
        Twine 
was charged with sexual assault. His case proceeded to trial before a jury on 
July 16, 2002. After the State rested on July 17, Twine took the stand on his 
own behalf. The following exchange took place at the beginning of Twine’s 
cross-examination:
  
Q.[By 
the prosecutor] You’re comfortable with all the answers you’ve just given?
 
                A. 
   Yes, sir.
 
Q. 
You want to change, alter, or amend anything you just told this jury?
 
                A. 
    No, sir.
 
Q. 
You have to let me finish my questions before you start answering. Okay?
 
                A. 
    Yes, sir, please excuse me.
 
Q. 
Now you and I, besides maybe casual greetings in court, have never got to sit 
down and talk about what you just told this jury, have we? [Emphasis 
supplied.] 
 
  
        At 
that point, defense counsel objected to the prosecutor’s question as a 
violation of Twine’s Sixth Amendment rights and moved for an instruction to 
disregard. The trial court sustained the objection and instructed the jury: 
“Ladies and gentlemen, you’ll disregard the last comment by the prosecutor. 
It’s as if it was not said. And you’ll retire to the jury room.” Outside 
the jury’s presence, defense counsel then moved for a mistrial on the ground 
that the prosecutor’s question was a comment on Twine’s post-arrest silence. 
The trial court granted the motion.
        Thereafter, 
Twine filed an application for a writ of habeas corpus, contending that his 
retrial was jeopardy barred because the prosecutor had deliberately or 
recklessly provoked the mistrial by his manifestly improper question. During the 
writ hearing, Twine attempted to introduce into evidence the reporter’s record 
from State v. Swanda Marie Lewis.[1]  The Lewis 
case had also ended in a mistrial after the same prosecutor as in Twine’s case 
had made a different comment about Lewis’s post-arrest silence. The trial 
court sustained the State’s relevance objection to the Lewis 
reporter’s record and refused to consider it in Twine’s habeas 
proceeding.  On appeal from that hearing, we held that the trial court 
erred by excluding the Lewis reporter’s record because it was relevant 
to whether the prosecutor was conscious of the risk that his question in 
Twine’s case could cause a mistrial.  Ex parte Twine, 111 S.W.3d 
664, 667 (Tex. App.—Fort Worth 2003, pet. ref’d) (Twine I).  We 
remanded the case to the trial court for further proceedings. Id. at 669.
        Following 
our decision in Twine I, the court of criminal appeals issued its 
decision in Ex parte Peterson, in which it clarified the standard for 
reviewing a double jeopardy habeas application based on prosecutorial 
misconduct. 117 S.W.3d 804, 816-17 (Tex. Crim. App. 2003). After a second 
hearing at which it had the benefit of the Peterson decision, the trial 
court granted Twine’s habeas application and made the following fact findings 
in support of its ruling: 
  
1. 
Manifestly improper prosecutorial misconduct provoked the mistrial;
 
2. 
A mistrial was required because the prejudice produced from that misconduct 
could not be cured by an instruction to disregard;
 
3. 
The prosecutor engaged in that misconduct with the intent to goad the defendant 
into requesting a mistrial, or with conscious disregard for a substantial risk 
that the trial court would be required to declare a mistrial.
   
        This 
appeal followed. In its sole point on appeal, the State contends that Twine’s 
retrial is not jeopardy barred because each of these findings is erroneous.
Standard of Review
        In 
reviewing a trial court’s decision to grant or deny habeas relief, we review 
the facts in the light most favorable to the trial court’s ruling and must 
uphold that ruling absent an abuse of discretion. Id. at 819. We afford 
almost total deference to the trial court’s determination of historical facts 
supported by the record, especially when the fact findings are based on an 
evaluation of credibility and demeanor. Id. We afford the same level of 
deference to the trial court’s rulings on “application of law to fact 
questions” or “mixed questions of law and fact,” if the resolution of 
those questions turns on an evaluation of credibility and demeanor.  Id.  
However, we review de novo those “mixed questions of law and fact” that do 
not depend upon credibility and demeanor.  Id. 
        The 
purpose of the double jeopardy clause is to “protect a criminal defendant from 
repeated prosecutions for the same offense.” Id. at 810 (citing Oregon 
v. Kennedy, 456 U.S. 667, 671, 102 S. Ct. 2083, 2087 (1982)); Bauder v. 
State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996) (Bauder I). In 
determining whether the double jeopardy clause prohibits retrial after a 
defendant’s successful mistrial request on the ground of prosecutorial 
misconduct, the trial court must decide: (1) whether manifestly improper 
prosecutorial misconduct provoked the mistrial; (2) whether the mistrial was 
required because the prejudice produced from the misconduct could not be cured 
by an instruction to disregard; and (3) whether the prosecutor engaged in the 
misconduct with the intent to goad the defendant into requesting a mistrial or 
with conscious disregard for a substantial risk that the trial court would be 
required to declare a mistrial. Peterson, 117 S.W.3d at 816-17. The 
habeas applicant bears the burden of proving all three prongs of this inquiry by 
a preponderance of the evidence. Id. at 818.
        It 
is only when the defendant is compelled to move for a mistrial because the 
prosecutor deliberately or recklessly “crossed ‘the line between legitimate 
adversarial gamesmanship and manifestly improper methods’ . . . that rendered 
trial before the jury unfair to such a degree that no judicial admonishment 
could have cured it” that the double jeopardy provision bars a retrial. Id. 
at 816 (emphasis supplied) (quoting State v. Lee, 15 S.W.3d 921, 923 
(Tex. Crim. App. 2000)); accord Ex parte Bauder, 974 S.W.2d 729, 732 
(Tex. Crim. App. 1998) (Bauder II). Under this rule, the prosecutor is 
not accountable for mistrials when the trial court need not have granted the 
defendant’s motion. Peterson, 117 S.W.3d at 815 n.45; Bauder I, 
921 S.W.2d at 699.
Instruction to Disregard
        We 
will first consider the State’s challenge to the trial court’s finding that 
a mistrial was required because the prejudice produced by the prosecutor’s 
improper comment could not be cured by an instruction to disregard, because that 
inquiry is dispositive of this appeal.
        The 
asking of an improper question, by itself, seldom warrants a mistrial; in most 
cases, any potential prejudice from such a question may be cured by an 
instruction to disregard the question. See Moore v. State, 882 S.W.2d 
844, 847 (Tex. Crim. App. 1994), cert. denied, 513 U.S. 1114 (1995). This 
principle applies to questions that can be construed as an improper comment on a 
defendant’s post-arrest silence. See Moore v. State, 999 S.W.2d 
385, 405 (Tex. Crim. App. 1999), cert. denied, 530 U.S. 1216 (2000); Dinkins 
v. State, 894 S.W.2d 330, 356 (Tex. Crim. App.), cert. denied, 516 
U.S. 832 (1995); Waldo v. State, 746 S.W.2d 750, 754 (Tex. Crim. App. 
1988). An instruction to disregard will be presumed effective unless the facts 
of the case suggest the impossibility of removing the impression produced on the 
minds of the jury. Waldo, 746 S.W.2d at 754. As the court of criminal 
appeals has stated,  
 
the 
. . . presumption that an instruction [to disregard] generally will not 
cure [a] comment on [the] failure of the accused to testify . . . has been 
eroded to the point that it applies only to the most blatant examples. 
Otherwise, the Court has tended to find the instruction to have force.
  
Dinkins, 
894 S.W.2d at 356 (quoting Waldo, 746 S.W.2d at 753). The effectiveness 
of a curative instruction is determined on a case-by-case basis. Johnson v. 
State, 83 S.W.3d 229, 232 (Tex. App.—Waco 2002, pet. ref’d).
        In 
determining whether an instruction to disregard was effective, courts consider a 
nonexhaustive list of factors, including: 1) the nature of the error; 2) the 
persistence of the prosecution in committing the error; 3) the flagrancy of the 
violation; 4) the particular instruction given; 5) the weight of the 
incriminating evidence; and 6) the harm to the accused as measured by the 
severity of the sentence. See Waldo, 746 S.W.2d at 754; see also 
Johnson, 83 S.W.3d at 232; Fletcher v. State, 852 S.W.2d 271, 275 
(Tex. App.—Dallas 1993, pet. ref’d). We will consider each of these factors 
in turn.
Nature of the Error and Flagrancy
        Twine 
contends that the error here was egregious because it affected his 
constitutional rights “in an area highly protected by appellate 
decisions.”  A question infringing on a defendant’s constitutionally 
protected rights is serious in nature.  Despite the constitutional 
significance, however, courts have frequently found instructions to disregard 
effective in cases involving comments on the defendant’s post-arrest 
silence.  See, e.g., Dinkins, 894 S.W.2d at 356; Waldo, 746 
S.W.2d at 754; Johnson, 83 S.W.3d at 233.
        Further, 
defense counsel objected before Twine answered the question.  Thus, this is 
not typically the type of error that renders an instruction to disregard 
ineffective.  See Moore, 882 S.W.2d at 847; see also Hyett v. 
State, 58 S.W.3d 826, 832-33 (Tex. App.—Houston [14th Dist.] 2001, pet. 
ref’d) (holding instruction to cure effective where defendant never answered 
the question involving post-arrest silence).
        Finally, 
there is little, if any, evidence that the prosecutor’s question was egregious 
or flagrant.  The question merely referred to Twine’s post-arrest silence 
indirectly, if at all, and inquired only whether Twine had previously spoken 
with the prosecutor about the case.  The prosecutor did not infer 
that Twine had chosen not to talk to anyone in law enforcement or that he had 
chosen not to testify.  To the contrary, the detective who investigated the 
sexual assault allegation had previously testified that she had interviewed 
Twine and taken a written statement from him.  This statement was 
introduced into evidence before Twine took the witness stand on his own behalf, 
and Twine agreed that he had voluntarily spoken with the police and given a 
written statement.
        In 
light of the evidence concerning the nature and flagrance of the error, we hold 
that these two factors mitigate against the trial court’s finding.
Persistence
        This 
case involved a single question followed by an objection, an instruction to 
disregard, and a mistrial. Thus, there could be no persistence in the 
prosecutor’s misconduct.[2]  This was not a 
case in which the prosecutor continued to ask questions regarding the 
defendant’s post-arrest silence in the face of a warning by the court or a 
series of sustained objections.  Therefore, the evidence concerning this 
factor mitigates against the trial court’s finding.
Particular Instruction Given
        The 
trial court gave the jury a strong admonition, saying, “Ladies and gentlemen, 
you’ll disregard the last comment by the prosecutor. It’s as if it was not 
said.”  An instruction specifically informing the jury to disregard the 
last question asked by the prosecutor has been held to be adequate to cure any 
prejudice caused by such a question.  Johnson, 83 S.W.3d at 232; see 
also Waldo, 746 S.W.2d at 755-56 (holding “[j]ury is instructed to 
disregard the last comment of the witness” sufficient); Mendoza v. State, 
959 S.W.2d 321, 324 (Tex. App.—Waco 1997, pet. ref’d) (holding instruction 
to the jury to “not consider the last statement made by the State’s attorney 
for any purpose whatsoever” adequate).  Consequently, the evidence 
concerning this factor mitigates against the trial court’s finding.
Weight of the Evidence
        At 
the time of the mistrial, which occurred before the close of the evidence, some 
evidence of Twine’s guilt had been presented. The victim, who used the 
pseudonym Sara Jensen, had testified in great detail about being sexually 
assaulted by Twine. The doctor that performed the sexual assault examination on 
Jensen did not find any evidence of trauma; however, Jensen’s testimony was 
supported by some physical evidence. For example, a vaginal swab taken a few 
hours after the incident revealed the presence of mineral oil, a major component 
in baby oil. This was consistent with Jensen’s story that Twine had used baby 
oil as a lubricant during the assault.
        Jensen’s 
story was also corroborated by Dorothy Christopher, who was babysitting 
Jensen’s children that evening. Christopher testified that Jensen called her 
during the evening, sounding upset, and started talking about her daughter being 
sick. Christopher was confused by Jensen’s call because her daughter was 
healthy. Jensen had testified that she made up a story about her daughter being 
sick so that Twine would let her go. Christopher further testified that Jensen 
called her back ten or fifteen minutes later, sobbing hysterically, and said 
that she had been raped.
        Twine 
testified that the alleged sexual assault never occurred. He stated that he had 
invited Jensen over to his house for drinks and conversation that night, but had 
sent her home early because he was due at work early the next morning. In 
Twine’s written statement, he claimed, “I don’t recall having any kind of 
sex or holding her hand or anything under those conditions. If something did 
happen between us, sexual contact was made, she may have dropped something in my 
drink.”
        On 
cross-examination, defense counsel asked Jensen about her financial situation. 
Jensen had recently been forced to give a baby up for adoption because she could 
not afford to raise the child. Jensen admitted that she had spoken to attorneys 
about bringing a civil suit against Twine for damages, and that they had 
counseled her that it would improve her chances if Twine was found guilty in 
criminal court. Despite defense counsel’s suggestion that the story was 
fabricated, Jensen never changed her story.
        In 
summary, there was some evidence of Twine’s guilt, but it was not 
overwhelming. Thus, we hold that the evidence pertinent to this factor mitigates 
neither for nor against the trial court’s finding.
Severity of Punishment
        This 
factor is inapplicable, because the case did not proceed to a verdict.
Analysis
        Most 
of the relevant Waldo factors, when analyzed based on the record in this 
case, mitigate against the trial court’s finding that a mistrial was required 
because an instruction to disregard would not have cured the prejudice caused by 
the prosecutor’s improper question. Although the efficacy of an instruction to 
disregard is ordinarily a fact question,[3] the trial 
court did not mention any evidence—and our review of the record has revealed 
none—to support its finding that such an instruction would not have cured the 
prejudice caused by the prosecutor’s misconduct in this case. Indeed, the 
trial court did not discuss whether an instruction to disregard would have been 
effective, but simply stated:
  
[Prong two of the Peterson analysis]—there was a mistrial required, and 
I realize that that is somewhat a judgment call on the part of an individual 
judge, but there are a few things that ought to be sacrosanct and one of them is 
a defendant’s post-arrest silence and that’s just my opinion and that’s 
the one I’m sticking with. [Prong two], I would say yes.
  
        In 
light of the case law concerning instructions to disregard, however, we cannot 
agree with the trial court that a mistrial is always warranted when the issue of 
post-arrest silence is raised improperly. See Moore, 999 S.W.2d at 405; Dinkins, 
894 S.W.2d at 356 (both holding that instruction to disregard comment on 
post-arrest silence is presumed effective except in most blatant cases); Waldo, 
746 S.W.2d at 752 (holding that such an instruction will be presumed effective 
except in extreme cases where facts suggest impossibility of removing 
prejudicial impression from jurors’ minds). Further, for all of the reasons we 
have discussed, we hold that the evidence, when viewed in the light most 
favorable to the trial court’s ruling, does not support the court’s finding 
that the prejudice produced by the prosecutor’s misconduct here could not have 
been cured by the court’s instruction to disregard.
Conclusion
        We 
sustain the State’s issues and hold that the trial court abused its discretion 
by granting Twine’s application for writ of habeas corpus. We reverse the 
trial court’s judgment granting Twine habeas relief and render judgment 
denying Twine’s habeas application.[4]
  
  
   
                                                                  JOHN 
CAYCE
                                                                  CHIEF 
JUSTICE
 
  
PANEL 
A:   CAYCE, C.J.; HOLMAN and MCCOY, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
September 9, 2004
 


NOTES
1.  
No. 0778116D (Crim. Dist. Ct. No. 1, Tarrant County, Tex. Nov. 14, 2001).
2.  
The prosecutor’s comment about the defendant’s post-arrest silence in Lewis 
is not evidence of persistence that would have affected the jury’s ability to 
disregard the improper question in this case. The jury here had no knowledge of 
the prosecutor’s question in Lewis.
3.  
See Lee, 15 S.W.3d at 926 n.9.
4.  
In light of our holding with regard to this prong of the Peterson test, 
we need not consider the State’s remaining arguments. See Tex. R. App. P. 47.1.