**Opinion filed June 17, 2010**



# In The

# Eleventh Court of Appeals

—————

## No. 11-08-00281-CR

—————

## STEVEN FRANK GALVAN, Appellant

## V.

## STATE OF TEXAS, Appellees

**On Appeal from the 39th District Court**

**Stonewall County, Texas**

**Trial Court Cause No. 1855**

### O P I N I O N

The jury convicted Steven Frank Galvan of aggravated assault with a deadly weapon. The offense was enhanced to a first degree felony, and the jury assessed punishment at twenty-five years. We affirm.

### I. *Background Facts*

Galvan lived in a trailer behind Sheriff Bill Mullen's house. Galvan had been drinking on the day of the assault. This upset Sheriff Mullen and his wife because alcohol conflicted with Galvan's medicine. Sherriff Mullen's wife found a bottle of whiskey and cans of beer inside Galvan's pickup, and she told him that Galvan had to move. Sheriff Mullen found Galvan at

Willie Turner's house; handed him the whiskey bottle, the beer, and $300; and told him not to come back home. Galvan took the items and then struck Sheriff Mullen on the head with the full whiskey bottle. A struggle ensued, and Galvan hit Sheriff Mullen two more times before the bottle broke. Turner came out of his house and helped Sheriff Mullen restrain Galvan.

Galvan's attorney filed a motion suggesting incompetency and requested a competency examination. The trial court appointed Dr. Samuel Brinkman to examine and observe Galvan. Dr. Brinkman examined Galvan and reported that he was incompetent to stand trial and that he did not believe Galvan could attain competence to stand trial in the foreseeable future. Galvan requested a jury trial on his competency. The jury found that Galvan was competent. A second jury was selected to hear Galvan's criminal case, and it found him guilty of aggravated assault with a deadly weapon and assessed his punishment at twenty-five years confinement.

## II. *Issues*

Galvan challenges his conviction on two grounds. First, he argues that the jury did not have factually sufficient evidence to conclude that he was competent to stand trial and, second, that the trial court abused its discretion when it denied his motion for mistrial.

## III. *Competency to Stand Trial*

Galvan argues that the evidence is factually insufficient to support the jury's competency finding because Dr. Brinkman's expert opinion was not effectively refuted. Because an accused is presumed competent, a defendant must prove by a preponderance of the evidence that he does not have the present ability to consult with his attorney or that he does not have a rational or factual understanding of the proceedings against him. *Manning v. State*, 730 S.W.2d 744, 748 (Tex. Crim. App. 1987); *see also* TEX. CODE CRIM PROC. ANN. art. 46B.003(a) (Vernon 2006).

We review the entire record of the competency hearing to determine whether the finding of competence is so against the great weight and preponderance of the evidence that it is manifestly unjust. *See Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990) (adopting civil standard for reviewing factual challenges when the defendant has the burden of proof and the standard is proof by a preponderance of the evidence); *Williams v. State*, 191 S.W.3d 242, 248-51 (Tex. App.—Austin 2006, no pet.) (appellate court reviews the evidence offered at the competency hearing when performing a factual sufficiency review). The jury is the judge of the credibility of the witnesses and the weight to be given to the testimony. *Wesbrook v. State*, 29

2

S.W.3d 103, 111 (Tex. Crim. App. 2000). The jury may accept or reject all or any of a witness's testimony. *Id.*

Galvan called Dr. Brinkman as an expert witness. Dr. Brinkman is a neuropsychologist. He spent an hour with Galvan taking a history and performing a subjective evaluation. Galvan then took several hours of standardized psychological tests. This testing revealed a verbal IQ of fifty-seven, a performance IQ of fifty-nine, and a full-scale IQ of fifty-four. Galvan's scores indicated mental retardation, although Dr. Brinkman testified that additional testing would be necessary to make that determination. Dr. Brinkman acknowledged that Galvan was being manipulative and that he wanted to appear more impaired than he actually was, but in his opinion, Galvan's best IQ scores would still be in a borderline mental retardation category. He testified that Galvan's verbal interaction was not good and that he had to push Galvan to answer questions. Dr. Brinkman determined that Galvan was not competent to stand trial because he did not have an efficient present ability to consult with his attorney with a reasonable degree of rational understanding. Because of this conclusion, he did not reach an opinion on whether Galvan understood the proceedings against him.

Dr. Brinkman agreed that his opinion was a subjective determination and that it was impossible to know definitively if Galvan had been honest. Dr. Brinkman agreed that there was evidence Galvan was malingering, but he testified that he did not administer any specialized malingering tests because Galvan's pattern of performance on different test types did not suggest that it was necessary.

The State called several lay witnesses. Deputy Rusty Harris testified that he had known Galvan for about nine years, had frequent interaction with him during that time, and never had any problems communicating with him. Dr. Brinkman had testified that when he saw Galvan his head was down, he made little eye contact, and he appeared very sad and irritable. Conversely, Deputy Harris testified that when he transported Galvan to Dr. Brinkman's office that Galvan's demeanor was normal, that he did not have to pry any conversation out of him, and that Galvan carried himself normally with his head upright. Although Dr. Brinkman believed Galvan had difficulty communicating, he agreed that if Galvan had communicated with others on the ride to his office, this would indicate that Galvan had successfully manipulated him. Deputy Harris testified that he and Galvan talked and laughed the entire trip to and from Dr. Brinkman's office.

Essie Ann Brazee, a former employee of the Stonewall County Sheriff's office, testified similarly. Brazee had known Galvan for approximately fifteen to twenty years and never had any trouble communicating with him. She testified that she was working at the jail the night Galvan was arrested and remembered conversing with Galvan without difficulty. That night he said to her, "I screwed up, didn't I?"

Sherry Taylor testified that she had known Galvan for twelve years and that she worked at Rolling Plains Detention Center where Galvan was housed. She conversed with Galvan a few times, all without problems. She also testified that Galvan arrived at the detention center clean cut and well groomed. Sometime later, when she asked him why he did not get a haircut, he responded that he was waiting to be released.

Galvan has directed us to additional testimony elicited at trial, including his own testimony, to support his argument. This evidence is outside the scope of our review because we are concerned with the sufficiency of the evidence presented to the competency jury and because Galvan does not contend that his competency was presented to the trial court for further ruling during the regular trial. Moreover, even were we to consider Galvan's trial testimony, it indicates rather clearly that he was able to consult with his attorney. Galvan testified that he and his counsel had an agreement that he would remain calm; he described his family, work, educational, and medical history without any apparent difficulty; and he described in considerable detail the events leading up to the confrontation with Sheriff Mullen and the confrontation itself.

After considering all of the evidence presented during the competency hearing, we hold that the jury's finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Dr. Brinkman's opinion was not binding upon the jury. *See City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005) (even uncontroverted expert testimony does not bind jurors unless the subject matter is one for experts alone).[1] Dr. Brinkman's determination is necessarily subjective and, to some extent, dependent upon the information provided him by Galvan. The jury was free to reject Dr. Brinkman's opinion if, for example, they believed that this opinion was undermined by Galvan's intentional misconduct.

---

[1] *See also Graham v. State*, 566 S.W.2d 941, 950 (Tex. Crim. App. 1978) (it is not necessary for the State to present expert medical testimony that a defendant is sane in order to counter the defense experts).

4

Dr. Brinkman believed that Galvan had intentionally exaggerated the degree of his impairment but did not believe this had impacted his assessment. There was evidence that Galvan was more successful than Dr. Brinkman realized. For example, Galvan had no difficulty communicating with Deputy Harris immediately before and after Dr. Brinkman's examination, and he modified his behavior and appearance for his competency examination. The jury's verdict did not go against the great weight of the evidence nor was it manifestly unjust. Galvan's first issue is overruled.

IV. *Motion for Mistrial*

In his second issue, Galvan asserts that the trial court abused its discretion by denying his motion for a mistrial following the State's comment on his right to remain silent. Galvan testified in his own defense and claimed that Sheriff Mullen was the aggressor and that Sheriff Mullen choked him and put dirt in his mouth. The prosecutor asked Galvan on cross-examination why he did not relate his version of the events to Texas Ranger Dwayne Williams when he came to see him. Galvan's counsel objected, alleging that this was an improper comment on Galvan's post-*Miranda*[2] silence. Although the trial court initially denied the objection, Galvan never answered the question and the trial court reconsidered its ruling and sustained the objection. It then gave the jury an instruction to disregard.

A mistrial is an extreme remedy for prejudicial effects occurring during the trial process. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). A trial court's denial of a motion for mistrial is upheld in the absence of an abuse of discretion. *Id*.

A comment on a defendant's post-arrest silence violates the Fifth Amendment prohibition against self-incrimination. *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995). However, an improper comment does not lead to automatic reversal and an effective instruction to disregard will ordinarily cure the prejudicial effect. *Perez v. State*, 187 S.W.3d 110, 113 (Tex. App.—Waco 2006, no pet.). An instruction to disregard will be presumed effective unless the facts of the case suggest the impossibility of removing the impression produced on the minds of the jury. *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988). The effectiveness of a curative instruction is determined on a case-by-case basis. *Johnson v. State*, 83 S.W.3d 229, 232 (Tex. App.—Waco 2002, pet. ref'd). Although not specifically adopted as definitive or

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

exhaustive, the courts have looked to several factors to determine whether an instruction to disregard cured the prejudicial effect: (1) the nature of the error; (2) the persistence of the prosecution in committing the error; (3) the flagrancy of the violation; (4) the particular instruction given; (5) the weight of the incriminating evidence; and (6) the harm to the accused as measured by the severity of sentence. *Id.*

Although the nature of the constitutional right affected was serious, its prejudicial effect is limited for several reasons. Galvan never answered the question. The State did not persist in questioning Galvan about his silence or mention it during closing argument. The trial court timely instructed the jury "to disregard [counsel's] last question."[3] Finally, the improper question did not change the outcome of the case in light of all the evidence supporting Galvan's conviction.

We cannot say that the trial court abused its discretion in denying the mistrial motion, and we overrule Galvan's second issue.

## V. *Conclusion*

The judgment of the trial court is affirmed.


RICK STRANGE

JUSTICE


June 17, 2010

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

---

[3]Courts have held similar instructions adequately cured any error. *See Waldo*, 746 S.W.2d at 755-56 ("Jury is instructed to disregard the last comment of the witness."); *Mendoza v. State*, 959 S.W.2d 321, 324 (Tex. App.—Waco 1997, pet. ref'd) ("I again instruct the jury that they will not consider the last statement made by the State's attorney for any purpose whatsoever."); *Johnson*, 83 S.W.3d at 232 ("Ladies and gentlemen, please disregard the last question by the prosecutor.").