Opinion filed June 17,
2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-08-00281-CR

                                                    __________

 

                             STEVEN
FRANK GALVAN, Appellant

 

                                                             V.

 

                                     STATE
OF TEXAS, Appellees



 

                                   On
Appeal from the 39th District Court

 

                                                         Stonewall
County, Texas

 

                                                       Trial
Court Cause No. 1855

 



 

                                                                  O
P I N I O N

The jury convicted Steven Frank Galvan of aggravated assault with a
deadly weapon.  The offense was enhanced to a first degree felony, and the jury
assessed punishment at twenty-five years.  We affirm.

I. Background Facts

Galvan lived in a trailer behind Sheriff Bill Mullen’s house.  Galvan had
been drinking on the day of the assault.  This upset Sheriff Mullen and his
wife because alcohol conflicted with Galvan’s medicine.  Sherriff Mullen’s wife
found a bottle of whiskey and cans of beer inside Galvan’s pickup, and she told
him that Galvan had to move.  Sheriff Mullen found Galvan at Willie Turner’s
house; handed him the whiskey bottle, the beer, and $300; and told him not to
come back home.  Galvan took the items and then struck Sheriff Mullen on the
head with the full whiskey bottle.  A struggle ensued, and Galvan hit Sheriff Mullen
two more times before the bottle broke.  Turner came out of his house and helped
Sheriff Mullen restrain Galvan.

Galvan’s attorney filed a motion suggesting incompetency and requested a
competency examination.  The trial court appointed Dr. Samuel Brinkman to
examine and observe Galvan. Dr. Brinkman examined Galvan and reported that he
was incompetent to stand trial and that he did not believe Galvan could attain
competence to stand trial in the foreseeable future.  Galvan requested a jury
trial on his competency.  The jury found that Galvan was competent.  A second
jury was selected to hear Galvan’s criminal case, and it found him guilty of
aggravated assault with a deadly weapon and assessed his punishment at
twenty-five years confinement.

II. Issues

            Galvan
challenges his conviction on two grounds.  First, he argues that the jury did
not have factually sufficient evidence to conclude that he was competent to
stand trial and, second, that the trial court abused its discretion when it
denied his motion for mistrial.   

III. Competency to Stand Trial

Galvan argues that the evidence is factually insufficient to support the
jury’s competency finding because Dr. Brinkman’s expert opinion was not
effectively refuted.  Because an accused is presumed
competent, a defendant must prove by a preponderance of the evidence that he
does not have the present ability to consult with his attorney or that he does
not have a rational or factual understanding of the proceedings against him.  Manning v. State, 730 S.W.2d 744, 748
(Tex. Crim. App. 1987); see also Tex. Code
Crim Proc. Ann. art. 46B.003(a) (Vernon 2006).  

We review the entire record of the competency hearing
to determine whether the finding of competence is so against the great weight
and preponderance of the evidence that it is manifestly unjust.  See Meraz
v. State, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990) (adopting civil
standard for reviewing factual challenges when the defendant has the burden of
proof and the standard is proof by a preponderance of the evidence); Williams
v. State, 191 S.W.3d 242, 248-51 (Tex. App.—Austin 2006, no pet.)
(appellate court reviews the evidence offered at the competency hearing when
performing a factual sufficiency review).  The jury
is the judge of the credibility of the witnesses and the weight to be given to
the testimony.  Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim.
App. 2000).  The jury may accept or reject all or any
of a witness’s testimony.  Id.

Galvan called Dr. Brinkman as an expert
witness.  Dr. Brinkman is a neuropsychologist. He spent an hour with Galvan
taking a history and performing a subjective evaluation.  Galvan then took
several hours of standardized psychological tests.  This testing revealed a
verbal IQ of fifty-seven, a performance IQ of fifty-nine, and a full-scale IQ
of fifty-four.  Galvan’s scores indicated mental retardation, although Dr.
Brinkman testified that additional testing would be necessary to make that
determination.  Dr. Brinkman acknowledged that Galvan was being manipulative
and that he wanted to appear more impaired than he actually was, but in his
opinion, Galvan’s best IQ scores would still be in a borderline mental
retardation category.  He testified that Galvan’s verbal interaction was not
good and that he had to push Galvan to answer questions.  Dr. Brinkman
determined that Galvan was not competent to stand trial because he did not have
an efficient present ability to consult with his attorney with a reasonable
degree of rational understanding.  Because of this conclusion, he did not reach
an opinion on whether Galvan understood the proceedings against him.

Dr. Brinkman agreed that his opinion was a
subjective determination and that it was impossible to know definitively if
Galvan had been honest.  Dr. Brinkman agreed that there was evidence Galvan was
malingering, but he testified that he did not administer any specialized
malingering tests because Galvan’s pattern of performance on different test
types did not suggest that it was necessary.

The State called several lay witnesses.  Deputy
Rusty Harris testified that he had known Galvan for about nine years, had
frequent interaction with him during that time, and never had any problems
communicating with him.  Dr. Brinkman had testified that when he saw Galvan his
head was down, he made little eye contact, and he appeared very sad and irritable.
 Conversely, Deputy Harris testified that when he transported Galvan to Dr.
Brinkman’s office that Galvan’s demeanor was normal, that he did not have to
pry any conversation out of him, and that Galvan carried himself normally with
his head upright.  Although Dr. Brinkman believed Galvan had difficulty
communicating, he agreed that if Galvan had communicated with others on the
ride to his office, this would indicate that Galvan had successfully
manipulated him.  Deputy Harris testified that he and Galvan talked and laughed
the entire trip to and from Dr. Brinkman’s office.

Essie Ann Brazee, a former employee of the
Stonewall County Sheriff’s office, testified similarly.  Brazee had known
Galvan for approximately fifteen to twenty years and never had any trouble
communicating with him.  She testified that she was working at the jail the
night Galvan was arrested and remembered conversing with Galvan without
difficulty.  That night he said to her, “I screwed up, didn’t I?”

Sherry Taylor testified that she had known
Galvan for twelve years and that she worked at Rolling Plains Detention Center
where Galvan was housed.  She conversed with Galvan a few times, all without
problems.  She also testified that Galvan arrived at the detention center clean
cut and well groomed.  Sometime later, when she asked him why he did not get a
haircut, he responded that he was waiting to be released.

Galvan has directed us to additional testimony
elicited at trial, including his own testimony, to support his argument.  This
evidence is outside the scope of our review because we are concerned with the
sufficiency of the evidence presented to the competency jury and because Galvan
does not contend that his competency was presented to the trial court for
further ruling during the regular trial.  Moreover, even were we to consider
Galvan’s trial testimony, it indicates rather clearly that he was able to
consult with his attorney.  Galvan testified that he and his counsel had an
agreement that he would remain calm; he described his family, work,
educational, and medical history without any apparent difficulty; and he
described in considerable detail the events leading up to the confrontation
with Sheriff Mullen and the confrontation itself.

After considering all of the evidence presented
during the competency hearing, we hold that the jury’s finding is not so
against the great weight and preponderance of the evidence as to be manifestly
unjust.  Dr. Brinkman’s opinion was not binding upon the jury.  See City of
Keller v. Wilson, 168 S.W.3d 802, 820 (Tex. 2005) (even uncontroverted
expert testimony does not bind jurors unless the subject matter is one for
experts alone).[1] 
Dr. Brinkman’s determination is necessarily subjective and, to some extent,
dependent upon the information provided him by Galvan.  The jury was free to
reject Dr. Brinkman’s opinion if, for example, they believed that this opinion
was undermined by Galvan’s intentional misconduct.  Dr. Brinkman believed
that Galvan had intentionally exaggerated the degree of his impairment but did
not believe this had impacted his assessment.  There was evidence that Galvan
was more successful than Dr. Brinkman realized.  For example, Galvan had no
difficulty communicating with Deputy Harris immediately before and after Dr.
Brinkman’s examination, and he modified his behavior and appearance for his
competency examination.  The jury’s verdict did not go against the great weight
of the evidence nor was it manifestly unjust.  Galvan’s first issue is
overruled.   

IV. Motion for Mistrial

In his second issue, Galvan asserts that the trial court abused its
discretion by denying his motion for a mistrial following the State’s comment
on his right to remain silent.  Galvan testified in his own defense and claimed
that Sheriff Mullen was the aggressor and that Sheriff Mullen choked him and
put dirt in his mouth.  The prosecutor asked Galvan on cross-examination why he
did not relate his version of the events to Texas Ranger Dwayne Williams when
he came to see him.  Galvan’s counsel objected, alleging that this was an
improper comment on Galvan’s post-Miranda[2]
silence.  Although the trial court initially denied the objection, Galvan never
answered the question and the trial court reconsidered its ruling and sustained
the objection.  It then gave the jury an instruction to disregard.

A mistrial is an extreme remedy for prejudicial effects occurring during
the trial process.  Archie v. State, 221 S.W.3d 695, 699 (Tex. Crim.
App. 2007).  A trial court’s denial of a motion for mistrial is upheld in the
absence of an abuse of discretion.  Id.  

A
comment on a defendant’s post-arrest silence violates the Fifth Amendment
prohibition against self-incrimination.  Dinkins v. State, 894 S.W.2d
330, 356 (Tex. Crim. App. 1995).  However, an improper comment does not lead to
automatic reversal and an effective instruction to disregard will ordinarily
cure the prejudicial effect.  Perez v. State, 187 S.W.3d 110, 113 (Tex.
App.—Waco 2006, no pet.).  An instruction to
disregard will be presumed effective unless the facts
of the case suggest the impossibility of removing the impression produced on
the minds of the jury.  Waldo v. State, 746 S.W.2d 750, 754 (Tex.
Crim. App. 1988).  The effectiveness of a curative
instruction is determined on a case-by-case basis.  Johnson v. State, 83
S.W.3d 229, 232 (Tex. App.—Waco 2002, pet. ref’d).  Although not specifically
adopted as definitive or exhaustive, the courts have looked to several factors
to determine whether an instruction to disregard cured the prejudicial effect:  (1)
the nature of the error; (2) the persistence of the prosecution in committing
the error; (3) the flagrancy of the violation; (4) the particular instruction
given; (5) the weight of the incriminating evidence; and (6) the harm to the
accused as measured by the severity of sentence.  Id.

Although the nature of the constitutional right affected was serious, its
prejudicial effect is limited for several reasons.  Galvan never answered the
question.  The State did not persist in questioning Galvan about his silence or
mention it during closing argument.  The trial court timely instructed the jury
“to disregard [counsel’s] last question.”[3] 
Finally, the improper question did not change the
outcome of the case in light of all the evidence supporting Galvan’s
conviction.

We cannot say that the trial court abused its discretion in denying the
mistrial motion, and we overrule Galvan’s second issue.

V. Conclusion

The judgment of the trial court is affirmed.

            

 

RICK STRANGE

                                                                                    JUSTICE

 

June 17, 2010

Publish.  See
Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]See also Graham v. State, 566 S.W.2d 941, 950 (Tex. Crim. App. 1978) (it is not
necessary for the State to present expert medical testimony that a defendant is
sane in order to counter the defense experts).





[2]Miranda v. Arizona, 384 U.S. 436 (1966).





[3]Courts have held similar instructions adequately cured
any error.  See Waldo, 746 S.W.2d at 755-56 (“Jury is instructed to
disregard the last comment of the witness.”); Mendoza v. State, 959
S.W.2d 321, 324 (Tex. App.—Waco 1997, pet. ref’d) (“I again instruct the jury
that they will not consider the last statement made by the State’s attorney for
any purpose whatsoever.”); Johnson, 83 S.W.3d at 232 (“Ladies and
gentlemen, please disregard the last question by the prosecutor.”).